IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-3666
_____

ROBERT BUNOL,

Plaintiff-Appellee,

and

THE DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR,

Appellee,

versus

GEORGE ENGINE COMPANY, ET AL.

Defendants,

and

LOUISIANA INSURANCE GUARANTY ASSOC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
(July 7, 1993)

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

JOHNSON, Circuit Judge:

In 1979, Robert Bunol suffered two work-related injuries
while working for George Engine Company.  In 1987, Bunol filed a
claim for benefits pursuant to the Longshore and Harbor Workers'

Compensation Act (the Longshore Act), 33 U.S.C. §§ 901-950.[1]

Following an administrative hearing, the Louisiana Insurance

Guaranty Association (LIGA)[2] was ordered to pay benefits to

Bunol.  LIGA refused to pay, and Bunol eventually sought

enforcement in district court.  The district court entered

judgment in favor of Bunol, and LIGA now appeals.  Finding no

reversible error, this Court affirms.


I.  FACTS AND PROCEDURAL HISTORY

This case arises out of a claim for benefits under the

Longshore Act brought by Robert Bunol.  Following a hearing

before an Administrative Law Judge (ALJ), LIGA was ordered to pay

benefits to Bunol.[3]  LIGA failed to pay the compensation award

---

[1]  Under the Longshore Act, a claimant must file a claim
within one year of the time claimant becomes aware or should have
become aware of the relationship between the injury and
employment.  33 U.S.C. § 913(a).  However, where the employer has
knowledge of the injury, the employer is required to file a
report with the Department of Labor, and the statute of
limitations does not begin to run until the report is filed.  33
U.S.C. § 930(a), (f).  In this case, Bunol filed his claim in
1987--approximately eight years after his injuries.  But the
Department of Labor did not receive an employer's report on
Bunol's injuries until 1989.  Therefore, the limitations period
was tolled, and Bunol's claim was timely.

[2]  George Engine Company went out of business in 1988.  LIGA
is a non-profit, unincorporated statutory entity created by
Louisiana law to pay the claims of insolvent Louisiana insurers.

[3]  The Longshore Act authorizes the Benefits Review Board
(the Board) to hear and determine appeals from ALJ decisions.
The Act, however, specifically provides that "[t]he payment of
the amounts required by an award shall not be stayed pending
final decision in any such proceeding unless ordered by the
Board.  No stay shall be issued unless irreparable injury would
otherwise ensue to the employer or carrier."  33 U.S.C. §
921(b)(3).

within the time period provided by the Longshore Act. *See* 33 U.S.C. § 918(a). Upon application of Bunol, the Deputy Commissioner of the U.S. Department of Labor issued a supplemental compensation order declaring the amount of the benefits to be in default. LIGA also refused to comply with the supplemental order, so Bunol sought enforcement of the order in district court pursuant to section 918(a) of the Longshore Act. Following a full briefing by the parties, the district court issued an order granting Bunol's motion for entry of default. LIGA timely appealed to this Court, and the district court granted LIGA's request for a permission to post a supersedeas bond and to stay execution of the judgment pending appeal.

## II. DISCUSSION

Both of the issues raised by LIGA present questions of law. This Court therefore conducts a *de novo* review of the determinations of the district court. *Palmco Corp. v. American Airlines, Inc.*, 983 F.2d 681, 684 (5th Cir. 1993).

First, LIGA argues that the district court should not have granted Bunol's motion for entry of default because the delays involved in obtaining administrative review of the ALJ's decision

---

Following the ALJ's decision, LIGA appealed the award to the Board and also filed a motion for reconsideration with the ALJ. That motion was denied by the ALJ, and LIGA also appealed that decision to the Board. LIGA then filed a petition for modification of the ALJ's original decision. The Board subsequently dismissed both of LIGA's appeals as premature since there was a pending motion for reconsideration. The modification motion is still pending before the ALJ.

3

are so extensive that they amount to a denial of due process. LIGA claims that the time typically required to obtain a review of an ALJ order by the Board is three years.  Unfortunately for LIGA, this argument was considered and rejected by this Court in *Abbott v. Louisiana Insurance Guaranty Ass'n (In re Compensation under Longshore & Harbor Workers' Compensation Act)*, 889 F.2d 626 (5th Cir. 1989), another case where LIGA was the wrong side of a district court's enforcement order.

LIGA argues that the *Abbott* Court's rejection of its due process claim was based not upon the adequacy of the Longshore Act's review proceedings but on LIGA's failure to adequately explain why the delay was unwarranted or unreasonable.  LIGA attempts to cure this perceived deficiency in the instant case by pointing to the Fifth Circuit rule that if a compensation order is reversed neither an employer nor a carrier has a cause of action for reimbursement from the claimant for monies paid but not owed.  Instead, there is only a claim for a credit against future compensation.  *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1209 (5th Cir. 1992).  If the compensation order in this case was eventually overturned in its entirety, LIGA would be unable to recover the compensation erroneously paid to the claimant.  In that event, LIGA argues, the Longshore Act's post-deprivation review would not be meaningful and a due process violation would result.

This attempt to distinguish *Abbott* is based upon a misunderstanding of this Court's holding.  In *Abbott*, LIGA had

4

been precluded from participating in the pre-deprivation ALJ hearing. Therefore, the precise issue before the *Abbott* Court was whether the other procedural protections in the Longshore Act were sufficient to protect LIGA's due process rights. The only reason the Court even discussed post-deprivation review is because LIGA had no opportunity to participate in the pre-deprivation hearing. In the instant case, however, LIGA fully participated in the ALJ hearing, and thus the post-deprivation review process in not at issue.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In *Abbott*, this Court noted that due process generally means that a party must have the opportunity for a hearing before the government interferes with the party's protected interest. *Id*. at 631. The property interest at issue in this case is LIGA's interest in the money it has been ordered to pay to Bunol. LIGA had a full pre-deprivation hearing by the ALJ before the compensation order was entered. Thus, LIGA had an opportunity to be heard "at a meaningful time and in a meaningful manner" before there was any government interference with its property rights. LIGA's rights to due process have been adequately protected.

Next, LIGA argues that the ALJ's compensation order was not a final decision as contemplated by the Longshore Act and its implementing regulations. If an employer or carrier does not comply with a compensation order within ten days after it becomes

5

due, the claimant can apply to the deputy commissioner for a supplementary order declaring a default. 33 U.S.C. § 918(a). A compensation order cannot become "due" if it is not "a final decision and order" of the ALJ. 20 C.F.R. § 702.348. To constitute a final decision, an order must "at a minimum specify the amount of compensation due or provide a means of calculating the correct amount without resort to extra-record facts which are potentially subject to genuine dispute between the parties." *Severin v. Exxon Corp.*, 910 F.2d 286, 289 (5th Cir. 1990).

In this case, the ALJ's order appears to award both temporary total disability and permanent partial disability during the same time period.[4] As LIGA correctly points out, a party cannot receive temporary total benefits and permanent partial benefits at the same time. *See Korineck v. General Dynamics Corp.*, 835 F.2d 42, 43-44 (2d Cir. 1987). Therefore, LIGA argues that, according to the *Severin* definition, the

---

[4] The order states:

1.  LIGA shall pay to Claimant compensation for temporary total disability for the period of July 31, 1979 through December 18, 1980, based upon an average weekly wage of $460.37, yielding a compensation rate of $306.91;

2.  LIGA shall pay to Claimant compensation for a permanent partial disability for the period after July 31, 1979 and continuing, based upon an average weekly wage of $460.37 and offset by a wage earning capacity of $240.38, yielding a compensation rate of $146.66 . . . .

6

compensation order in this case is not "final" and cannot be enforced by the district court.[5]

However, even though the order portion of the ALJ's decision provides for overlapping periods of temporary total and permanent partial compensation, the rest of the decision makes it clear that the overlap is simply a clerical error. The "Nature and Extent" section of the ALJ decision specifically finds that the claimant suffered a temporary total disability from July 31, 1979 to December 18, 1980, and a permanent partial disability <u>after December 18, 1980</u>. This clerical error was corrected in the supplemental order issued by the deputy director. As the district court noted, to preclude correction of errors in the calculation of benefits would serve no purpose.

One final point requires clarification. For direct appeals from ALJ decisions, the Longshore Act expressly provides: "The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier." 33 U.S.C. § 921(b)(3). Similar language governs appeals to this Court from decisions of the Board. 33 U.S.C. § 921(c). However, where the district court issues an enforcement order, the statute is silent as to whether a stay may be granted pending appeal of that order to this Court.

_____

[5] For the same reason, LIGA argues that the order was not "in accordance with law" as required by 33 U.S.C. § 918(a).

In this case, such a stay was granted upon LIGA's posting of a supersedeas bond.  The U.S. Department of Labor subsequently filed a motion to vacate, arguing that a stay of the enforcement order would be directly contrary to the Longshore Act's purpose of providing "a quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards."  *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 129 (5th Cir. 1983).  That motion to vacate, however, was withdrawn at oral argument by the Department of Labor.  Accordingly, this Court only addresses the issues raised by LIGA, and we do not reach the question of whether it was proper for the district court to grant the stay of execution pending this appeal.

## III.  CONCLUSION

Neither of the issues advanced by LIGA has merit.  The judgment of the district court is affirmed.