**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-60634

SHELL OFFSHORE, INC.,

Petitioner,

VERSUS

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR; FERNON GILLIAM,

Respondents.

CONSOLIDATED WITH

No.  96-60692

SHELL PIPE LINE CORP.,

Petitioner,

VERSUS

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR; LEE H. CAFIERO,

Respondents.

On Petition for Review of the Decision of the
Benefits Review Board

September 24, 1997

Before KING, DUHÉ, and WIENER, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

## BACKGROUND

These consolidated appeals present two issues: 1)whether the Omnibus Consolidated Rescissions and Appropriations Act of 1996 violates due process by automatically affirming claims older than one year as of September 12, 1996 and 2) what compensation, if any, two offshore workers are entitled to under the Longshore and Harbor Workers' Compensation Act. We find the Appropriations Act constitutional. We also affirm the compensation awarded to Gilliam and vacate and remand the issue of compensation due to Cafiero.

I.    No. 96-60634

Fernon Gilliam ("Gilliam"), a lease operator for Shell Offshore, Inc. ("Shell") injured his back on a platform in the Gulf of Mexico. Gilliam reported his injury to his foreman, but he continued to work for the remainder of his seven-day shift. Gilliam returned to shore for a seven day leave. During this time, he sought no medical assistance although he still experienced back pain. When Gilliam returned to work, he completed another seven-day shift despite having trouble performing his normal duties. During his next week off, Gilliam still felt pain in his lower back, which intensified after he assembled a swing set for his granddaughter. Gilliam, however, returned to work for another seven-day shift, but again, he had trouble performing his normal duties. When Gilliam finished this shift, he went to the hospital.

In the course of his treatment, Gilliam consulted nine

2

doctors. All agreed that Gilliam had suffered a back injury, but they disagreed as to whether the primary cause of the injury was the work-related accident or his assembly of the swing set. Eventually, Gilliam filed for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), and he received a hearing before an Administrative Law Judge ("ALJ"). Based on the medical evidence, the ALJ concluded that the injury was compensable and awarded Gilliam benefits. Shell appealed to the Benefits Review Board ("BRB").

II.  No. 96-60694

Lee Cafiero, a meter technician for Shell Pipe Line Corp. ("Shell"), injured his back by slipping on steps of a heliport. The parties stipulated that Cafiero's injury was work related, and Shell voluntarily paid benefits to Cafiero under two separate employee benefit plans, the Shell Disability Benefit Plan ("SDB Plan") and the Shell Disability Pension Plan ("SDP Plan").

Apparently unsatisfied with his benefits package, Cafiero claimed LHWCA benefits and received a hearing before an ALJ, who ordered Shell to pay Cafiero compensation benefits. Shell filed an appeal with the BRB.

III. The Appropriations Act

On September 12, 1996, the BRB affirmed the ALJ's decisions in the two cases pursuant to the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 101(e), 110 Stat. 1321 (1996)(the "Appropriations Act"). The Appropriations Act required, in part, that all claims pending before the BRB for

3

over one year, as of September 12, 1996, be automatically affirmed.

Shell appealed both cases contending that: 1) the Appropriations Act violated Shell's Fifth Amendment due process rights; 2) Gilliam's injury was the result of an independent, supervening cause which ended Shell's liability; 3) Cafiero waived his right to extra compensation by not filing a brief on the issue with this Court; 4) if Cafiero did not waive, then Shell deserved credit for the monies it had already paid to him; and 5) Cafiero's post injury wage earning capacity should have been based on the average of his reasonable salary range.

## DISCUSSION

### I. DUE PROCESS

In these consolidated appeals, Shell asserts that the provisions of the Appropriations Act automatically affirming the ALJs' decisions violate its Fifth Amendment right to due process. Thus, Shell asks this Court to declare the Appropriations Act unconstitutional. We disagree.

The essential element of due process is the right to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Not only does the LHWCA as amended by the Appropriations Act afford Shell a full pre-deprivation, trial-type hearing before the ALJ, it also grants Shell a post-deprivation hearing in the Circuit Courts of Appeals. Accordingly, we conclude that Shell was not deprived of property

4

without due process of law, and we affirm the constitutionality of the Appropriations Act.  See Bunol v. George Engine Co., 996 F.2d 67, 69 (5th Cir. 1993) (noting that where a party has had "an opportunity to be heard 'at a meaningful time and in a meaningful manner' before there was any government interference with its property rights[, its] rights to due process have been adequately protected").

## II. GILLIAM'S COMPENSATION UNDER LHWCA

### A. Standard of Review

This Court must affirm the ALJ' decision if it is in accordance with the law, is rational, and is supported by substantial evidence.  See Mijangos v. Avondale Shipyards, Inc., 948 F.2d 941, 944 (5th Cir. 1991).  Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) (internal quotation marks omitted).

### B. Gilliam's Award

The LHWCA makes compensation payable when an employee suffers accidental injury or death arising out of and in the course of employment.  See 33 U.S.C. § 903 (1984).  If an employee shows that he was injured in a work-related accident, then he benefits from a presumption that the LHWCA covers his injury.  See 33 U.S.C. § 920(a)(1927).  The burden of proof then shifts to the employer to present substantial evidence rebutting the presumption that the claimant's injury was work-related.  If the employer successfully

5

rebuts the presumption, the ALJ must examine the evidence as a whole to determine whether the injury is work-related. Here, Gilliam produced evidence that he suffered a work-related injury. Shell argues that it produced substantial evidence to rebut the presumption because it showed that assembling the swing set, and not the work accident, proximately caused Gilliam's injury.

Generally, the idea of proximate cause, as applied in tort law, does not apply to the LHWCA. See Bludworth Shipyard, Inc. v. Lira, 700 F.2d 1046, 1050 (5th Cir. 1983). With only a few exceptions, the court's function is at an end once causation in fact has been established. Id. One exception does arise when the claimed injury has a supervening, independent cause. Here, Shell argues that assembling the swing set was just such a cause.

This Circuit has articulated somewhat different standards as to what constitutes supervening cause. See Bludworth, 700 F.2d at 1046 (noting the tension between two standards); see also Atlantic Marine, Inc. v. Bruce, 661 F.2d 898, 901 n.5 (5th Cir. 1981). While Shell urges this Court to hold that one standard has evolved into the second, controlling standard, the rule in this Circuit is that only an *en banc* court can overrule or change what a previous panel has held. See Wood v. U.S., 863 F.2d 417, 421 (5th Cir. 1989); U.S. v. Nixon, 827 F.2d 1019,1023 (5th Cir. 1987). There have been no *en banc* holdings on this issue. We need not decide which standard is the operative one and we affirm Gilliam's award because the facts in this record do not meet either standard for supervening cause.

The initial standard was stated in <u>Voris v. Texas Employers Ins. Ass'n</u>, 190 F.2d 929 (5th Cir. 1951) which held that a supervening cause was an influence originating entirely outside of employment that overpowered and nullified the initial injury. <u>Voris</u> at 934. Here, assembling the swing set did not overpower and nullify the work-related injury. The ALJ found that the work-related accident caused the injury and that assembling the swing set only exacerbated the symptom. This finding is supported by substantial evidence.

Subsequently, in <u>Mississippi Coast Marine v. Bosarge</u>, 637 F.2d 994, 1000 (5th Cir. 1981) another panel held that a simple "worsening" could give rise to supervening cause. There, the court held that "[a] subsequent injury is compensable if it is the direct and natural result of a compensable primary injury, as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause." <u>Id.</u> at 1000. Here, Shell claims that under the worsening standard, it should not be held liable for Gilliam's injury. Gilliam did not need to seek medical aid until after he assembled the swing set. Moreover, assembling a swing set is not an every day activity but involves lifting, bending, and twisting; therefore, assembling the swing set worsened the injury and is a supervening cause.

Contrary to Shell's argument, there is only weak evidence to suggest that assembling the swing set was a supervening cause. The evidence does show, though, that Gilliam was having trouble completing his normal work tasks even before he assembled the

7

swing. Nor was assembling the swing an abnormal activity for one with back pain. The swing set was very light, only six feet high, and assembling it required little exertion. There is, therefore, substantial evidence to support the ALJ, and he is the fact finder, not this Court.

In the alternative, Shell argues that Gilliam's intentional misconduct is a supervening cause. Shell points to <u>Bludworth</u> which concerned a claimant who intentionally withheld a material fact from his treating physician. <u>Id.</u> at 1046. Shell argues that this case comes within <u>Bludworth</u> because Gilliam did not inform his first four doctors of the work accident. Rather, he told the doctors only about the swing set incident and blamed his pain on assembling it. Additionally, of the nine doctors who treated Gilliam, only the sixth knew about both incidents. Shell argues that, as a result, none of the remaining physicians could treat Gilliam properly.

We reject this argument. There is no evidence of intentional misconduct. The facts do not indicate that Gilliam intentionally withheld any information. Simple oversight is equally likely. Further, there is no evidence that Gilliam's failure to inform all nine of his doctors of both incidents affected his treatment.


III. CAFIERO'S COMPENSATION UNDER LHWCA

Cafiero filed a brief in this Court only on the constitutional issue. As Shell has pointed out, there is authority within this Circuit that a party who inadequately briefs an issue

8

waives the claim. <u>Villenueva v. CNA Ins. Cos.</u>, 868 F.2d 684, 687 n.5 (5th Cir. 1989); <u>Cinel v. Connick</u>, 15 F.3d 1338, 1345 (5th Cir. 1994). In <u>CNA</u>, the insurance company raised an issue with this Court that had no statutory support; thus, there was no legal basis on which we could decide the issue. In <u>Cinel</u>, the appellant attempted to raise a new issue which had not been briefed. Again, this Court had no legal basis upon which to decide the issue.

Although Cafiero failed to brief the issues of his compensation as raised by Shell, we will decide the issues. Here, the rule does not apply because Cafiero has neither attempted to raise new issues nor raised an issue without sufficient statutory support. This case is similar to <u>Louisiana Landmarks Soc. v. City of New Orleans</u>, 85 F.3d 1119, 1122 n.3 (5th Cir. 1996) in which we noted that while the appellee had not argued an issue in its brief, we could still consider the issue since the appellant's brief had addressed it. "The policies . . .[of] avoid[ing] piecemeal litigation and conserv[ing] judicial resources . . .are less implicated when the party against whom waiver is asserted is the appellee." <u>Laitram Corp. v. NEC Corp.</u>, 115 F.3d 947, 954 (Fed. Cir. 1997). Cafiero is the Appellee and Shell, the Appellant, has briefed the issues; therefore, this Court may decide the issues on the merits.

A. THE ALJ'S GRANT OF CREDIT TO SHELL

    1. *Standard of Review*

Shell urges this Court to consider whether the ALJ's grant of credit was proper as a matter of law. As such, it would be subject

to *de novo* review.  We conclude, however, that the resolution of this issue rests upon a factual dispute because the question is whether the half-pay that Shell paid Cafiero was an advance payment of compensation.  Therefore, the standard of review is substantial evidence.

2. *The Merits*

The parties agree that Cafiero is entitled to LHWCA benefits, but Shell contends that it deserved a 100% credit for the full-pay and half-pay it paid Cafiero under the Shell Disability Benefits Plan ("SDB Plan")[1].

Section 914(j) of the LHWCA provides that "[i]f the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due."  33 U.S.C. § 914(j)(1984).  The BRB has stated that "[I]f [the] employer paid the benefits and intended them as advance payments of compensation,[the] employer is entitled to a credit under Section 14(j)." Mijangos v. Avondale Shipyards, Inc., 19 BRBS 15, 21 (1986).  The employer, however, is not entitled to a credit when it continues the employee's salary under a formal salary continuance plan unless it shows that these payments were intended to be advance payments of compensation. See Fleetwood v. Newport News Shipbuilding and Dry Dock Co., 16 BRBS 282 (1984), aff'd, 776 F.2d 1225 (4th Cir. 1985).

Here, the ALJ found that the SDB Plan provided an employee

---

[1]Shell does not dispute on appeal the payments it made to Cafiero under the SDP Plan.

10

with 26 weeks of full-pay and 26 weeks of half-pay for an occupational disability regardless of length of employment. During the half-pay periods, disability benefits were to be reduced if the half pay plus any workers compensation totaled more than the worker's full pay. The ALJ found that Shell intended the 26 weeks of full-pay to be advance compensation within the meaning of Section 914(j). As a result, Shell would get full credit for monies paid during the full-pay period. The ALJ, however, found that the 26 weeks of half-pay were not advance compensation payments within Section 914(j). In coming to this conclusion, the ALJ relied upon the testimony of a Shell Human Resources representatives who stated that the half-wage payments under the SDB Plan were not intended to be advance compensation payments. Moreover, while the full-wage payments were to be offset by compensation payments, the SDB Plan stated that the half-wage payments were not to be so offset.

When the ALJ signed the order implementing this plan, however, he gave Shell credit for only two-thirds of the full-wage payments it made. The ALJ gave no explanation for this result despite the fact that it found Shell entitled to full credit for the full-wage payments. Because there is no factual support in the record for this result, we find there is no substantial evidence to support the two-thirds credit. Therefore, we modify the judgment to reflect Shell's entitlement to full credit for the full-wage payments and affirm.

As for the half-pay benefits, we affirm the ALJ's decision.

11

We must affirm if the decision is supported by substantial evidence. Here, Shell's own employee testified that the half-wage payments were not intended as advance compensation payments, and its SDB Plan states that the half-wage payments were not to be offset while the full-wage were. Shell argues that the ALJ's decision does not make sense because both the half- and full-pay benefits were coming from the same plan, the purpose of which was to compensate an injured employee. The law, however, states that the employer must intend the payment as an advance compensation payment. Mijangos 19 BRBS at 21. Shell submits that the only change in intent was the amount of benefits to be paid not the purpose for paying the benefits. Such a submission, however, is not strong enough to overcome the evidence of Shell's own employee who gave contrary testimony or the evidence of Shell's own plan which states that half-wages are not to be offset.

B. CAFIERO'S POST INJURY WAGE EARNING CAPACITY

1. *Standard of Review*

Although Shell again urges this Court to adopt a *de novo* standard, we decline because the issue is factual not legal. Here, the issue turns on whether substantial evidence supports the ALJ's finding that $35,000 was the correct wage earning capacity.

2. *The Merits*

The LHWCA provides that Cafiero's post-injury wage earning capacity should be fixed "as shall be reasonable." See 33 U.S.C. § 908(h)(1984). The BRB has held that an average of the range of salaries identified for suitable alternative employment is a

12

reasonable method for determining a claimant's post-injury wage earning capacity.  <u>See</u> <u>Abbot v. Louisiana Ins. Guaranty Ass'n</u>, 27 BRBS 192, 205 (1993).

Here, Cafiero previously had worked as an insurance salesman, and Shell presented uncontradicted evidence that his post-injury wage earning capability ranged form $35,000 to $50,000.  Instead of choosing the average, as the BRB has held, the ALJ chose $35,000 as Cafiero's capacity. There is no explanation for this decision and we find no evidence in the record to support the ALJ's decision not to use the average of Cafiero's earning capacity.  We vacate the decision and remand it to the ALJ for reconsideration consistent with this opinion.

CONCLUSION

For the foregoing reasons we AFFIRM in part and VACATE and REMAND in part.