REVISED, MARCH 13, 1998

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 96-60751

---

JOHNNIE GOODEN,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR; ITO
CORPORATION,

Respondents.

---

Appeal from a Decision of the
Benefits Review Board

---

March 12, 1998

Before POLITZ, Chief Judge, GARWOOD and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner Gooden (Gooden) was a longshoreman employed by ITO Corporation (ITO) as a forklift operator. On November 13, 1990, Gooden suffered a heart attack that necessitated a triple coronary bypass surgery three days later. Unable to work after the surgery, Gooden sought benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (LHWCA).

The claim was referred to an Administrative Law Judge (ALJ) in Metairie, Louisiana, who dismissed the claim on the grounds that

there was no relationship between Gooden's employment and his underlying cardiac disease. This dismissal was subsequently affirmed without review by the Benefits Review Board, pursuant to Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134 § 101, 1996 U.S.C.C.A.N. (110 Stat.) 1321-218, 219.[1] Gooden, raising several points of error, now appeals.

### Facts and Proceedings Below

It is undisputed that Gooden had preexisting heart disease dating back to 1987. In that year, he underwent a balloon dilation of a coronary artery and a coronary angiography, which revealed the coronary artery disease, but the disease was not severe enough to warrant surgery. He returned to work and did not suffer any symptoms for the next three years.

On October 31, 1990, Gooden was working for ITO as a forklift operator and experienced chest pains while physically lifting bags of rice that had fallen from the pallets, which he was moving around with his forklift. Gooden continued to work and went to a hospital after work. He was given medication and released from the hospital. The doctor recommended that Gooden undergo an angiography, but the procedure was delayed by Gooden, who said he needed to work.

On November 13, 1990, Gooden again experienced chest pains

---

[1]

Under the Appropriations Act, appeals from ALJ decisions under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* that had been pending before the Benefits Review Board (BRB) for more than one year before September 12, 1996, such as Gooden's, were to be considered affirmed by the BRB and final for purposes of appeal as of that date.

while lifting heavy bags that had fallen from their pallets. It is unclear when the chest pains actually started. The hospital records list the "onset of injury" as having occurred at two o'clock in the morning while Gooden was at home. The isoenzyme analysis, however, reveals a pattern of enzyme levels that indicate that Gooden suffered a myocardial infarction "several hours" before the initial blood specimen taken at 3:45 p.m. on November 13.

Gooden testified he felt the pains at work. He subsequently took his medication and the pains subsided for a while. In the afternoon, when the pains returned, he reported them to his foreman and his doctor. At his doctor's recommendation, Gooden admitted himself to the hospital.

At the hospital, he was diagnosed with an acute myocardial infarction. An angiography was performed, and subsequently he underwent a triple bypass surgery. He did not return to his job as a forklift operator and has not worked since.

Gooden sought compensation for his injury under the LHWCA, but the claim was denied by the ALJ for lack of causation. The ALJ found that Gooden had met his initial burden of establishing a *prima facie* case of causation under section 920(a), but he also found that the employer met its burden of rebutting the presumption with substantial evidence that showed the injury did not "arise" out of the employment.

Specifically, the ALJ relied on the testimony of two cardiovascular physicians who testified that the symptoms may have been caused or unmasked by Gooden's work, but that the work did not

3

cause or aggravate the cardiovascular disease. He discounted testimony to the contrary by a third doctor, who specialized in internal medicine but was not a cardiovascular specialist.

**Discussion**

I.  Due Process

Gooden contends that automatic affirmance under the Appropriations Act violates his due process rights by retroactively depriving him of a level of review by the BRB. In *Shell Offshore, Inc. v. Director, Office of Workers' Compensation Programs*, 122 F.3d 312, 315 (5th Cir. 1997) we specifically rejected this argument and held that this provision of the Appropriations Act is constitutional. In light of *Shell*, we hold that this provision does not violate Gooden's due process rights.

II.  Presumption

Gooden contends that the ALJ misapplied the section 920(a) presumption, 33 U.S.C. § 920(a). Section 920(a) establishes that once a claimant puts forth a *prima facie* case, the claim is presumed to come within the LHWCA; this presumption can be rebutted by "substantial evidence to the contrary." 33 U.S.C. § 920(a).

A claimant, such as Gooden, bears the initial burden of establishing that (1) he suffered an injury and (2) the accident occurred in the course of employment or conditions existed at work that could have caused the harm. *See Kelaita v. Triple A Machine Shop*, 13 BRBS 326, 331 (1981). Once the claimant has established his *prima facie* case, a presumption is created which can be rebutted by the employer through substantial evidence establishing

4

the absence of a connection between the injury and the employment. *See Kier v. Bethlehem Steel Corp.*, 16 BRBS 128, 129 (1984); *Parsons Corp. of California v. Director, Office of Workers' Compensation Programs*, 619 F.2d 38 (9th Cir. 1980). If the employer rebuts the presumption, then the issue of causation must be decided by looking at all the evidence of record. *See Stevens v. Tacoma Boatbuilding Co.*, 23 BRBS 191, 192 (1990).

In this case, the ALJ found that Gooden established his *prima facie* case, and, thus, the burden shifted to ITO to bring forth substantial evidence to rebut the presumption. Instead of following a formal three-step analysis, the ALJ blended the second and third steps into one step. In so doing, the ALJ considered all the evidence presented by both parties, rather than first considering ITO's evidence alone and then considering both parties' evidence together only if ITO's evidence had rebutted the initial presumption.

While the ALJ's analysis of the issue may have strayed from the formal three-step process, we conclude that this departure was not error. To hold otherwise would elevate form over substance. If the judge found that the evidence defeated the claim, then surely he found it sufficient to rebut the initial section 920(a) presumption. The initial presumption is either rebutted or it is not rebutted; which party's evidence produces the rebuttal is essentially irrelevant.

III. Proper Focus

Gooden contends that the ALJ erroneously focused on the

5

origins of his underlying heart condition, rather than on the ultimate heart attack. We agree.

An LHWCA employer generally takes his employee as he finds him. *See Pacific Employers' Ins. Co. v. Pillsbury*, 61 F.2d 101, 103 (9th Cir. 1932) ("The employer accepts the employee subject to physical disabilities, which may make the latter more susceptible to injury than would be a stronger or more robust person . . . ."). Thus, the focus should be on the ultimate injury, not Gooden's preexisting condition. In this case, the injury for which recovery is sought is the heart attack, not the underlying heart disease.

It is well settled that a heart attack suffered in the course and scope of employment is compensable even though the employee may have suffered from a related preexisting heart condition. In *Todd Shipyards Corp. v. Donovan*, 300 F.2d 741 (5th Cir. 1962) and *Southern Stevedoring Co. v. Henderson*, 175 F.2d 863 (5th Cir. 1949), for example, the court awarded LHWCA benefits to workers who had suffered heart attacks while at work, despite their pre-existing heart conditions. The *Henderson* court stated:

> "The Act gives compensation for accidental injury or death arising out of and in the course of employment; it does not say caused by the employment. There is no standard or normal man who alone is entitled to workmen's compensation. Whatever the state of health of the employee may be, if the conditions of his employment constitute the precipitating cause of his death, such death is compensable as having resulted from an accidental injury arising out of and in the course of his employment. If the workman overstrains his powers, slight though they be, or if something goes wrong within the human frame, such as the straining of a muscle or the rupture of a blood vessel, an accident arises out of the employment when the required exertion producing the injury is too great for the man undertaking the work; and the source of the force producing the injury need not be

6

external."   *Henderson*, 175 F.2d at 866, *quoted with approval in Donovan*, 300 F.2d at 745.

## Conclusion

Since the ALJ erroneously focused his analysis and findings on the underlying disease, his decision is vacated and the cause is remanded for further proceedings, with instructions that the findings must address the heart attack itself, consistent with our *Henderson* and *Donovan* opinions.  Whether a dismissal of Gooden's claim under an appropriate analysis is supportable is a matter we leave in the first instance to the ALJ on remand, subject to review by the BRB and this Court.

VACATED and REMANDED