**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-60788
_____

HERBERT ZENON,

                                        Petitioner-
                                        Cross-Respondent,

                    VERSUS

PORT COOPER/T. SMITH STEVEDORING COMPANY, INC.,

                                        Respondent-
                                        Cross-Petitioner.

_____

Appeal from an Order of
the Benefits Review Board
_____

May 24, 1999

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Petitioner Herbert Zenon petitions, and respondent, Port Cooper/T. Smith Stevedoring Company, Inc. ("Port Cooper"), cross-petitions for review of a decision of an administrative law judge ("ALJ"), affirmed by operation of law by the Benefits Review Board ("BRB"), awarding longshore and harbor workers compensation benefits. We grant the petition for review and reverse and remand in part and affirm in part.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

A.

Zenon is a fifty-four-year-old man with only a fourth-grade education who has worked most of his adult life as a longshoreman. On October 2, 1988, he was cleaning up dunnage and debris for his employer, Port Cooper, when he allegedly was struck from behind by a plywood subwall that, he claims, hit him on the right side of his head, neck, and back, causing him to fall. Attempting to brace himself, he extended his left arm as he fell, purportedly causing injury to his left shoulder.

Initially Zenon did not request medical attention but continued working, feeling that his injuries were "insignificant" and reporting the accident to his supervisors "for notation purposes only." One week later, however, he began to complain of headaches, dizziness, and neck pain. On October 11, he met with Dr. Mukand Arora, who treated him with medications, physical therapy, and a cervical collar and placed him in an off-work status. Zenon visited multiple doctors and received a variety of examinations and treatments for about six months.

In April 1989, Zenon returned to work as a walking foreman for J.J. Flannagan Stevedores. In November 1989 and again in April 1990, he allegedly re-injured his neck and left shoulder. Needing surgery, he filed a claim for "temporary total disability" pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 ("LHWCA"). In November 1990, the parties settled this claim, with Port Cooper agreeing to pay temporary total disability

2

payments from February 23, 1989, to April 1989, and then again "once surgery is performed for a time period to be determined by the treating physician."  It was also stipulated that "a release to light duty work will allow [Zenon] to return to his job as a walking foreman under normal circumstances."

In April 1991, Zenon underwent surgery for his left shoulder, then was put on a physical therapy regimen that lasted three to four months.  In July 1991, Dr. Bryan indicated that he could return to his old position of walking foreman.

Because of scar tissue and a re-torn rotator cuff, Zenon needed to undergo a second left shoulder operation in September 1991.  In September 1992, Bryan wrote that Zenon could

> return to his job as a walking foreman as long as he does not climb or descend a ladder which has more than 8 rungs.  He will not be able to operate a tow motor or large vehicle.  He will not be able to lift more than 35 lbs. with his left arm, and in no way can he perform any tasks of lifting overhead.

B.

Claiming that he has been unable to return to work since his shoulder operations, Zenon requests the continuation of his total disability benefits, which Port Cooper stopped paying on February 17, 1992.  Zenon argues that such benefits are mandated by the 1990 stipulation.  Port Cooper contends that Dr. Bryan has released Zenon back to work, thereby relieving it of its payment obligations under the stipulation.

Six days before a scheduled April 28, 1993, administrative hearing on this matter, Port Cooper offered Zenon employment

3

purportedly tailored to his condition: a light-duty, walking foreman's position.[1] Port Cooper argues that this offer constitutes suitable alternative employment, thereby relieving it of its total disability payment obligations to Zenon from April 22, 1993, onward.

The ALJ concluded that (1) Zenon should receive temporary total compensation from February 18, 1992, through September 30, 1992 (the date of Zenon's maximum medical recovery, as determined by the ALJ), under the terms of the stipulation; (2) Zenon should receive permanent total disability compensation from September 30, 1992, through April 22, 1993, as per the LHWCA; (3) Port Cooper's April 22, 1993, job offer was "suitable alternative employment," and therefore precluded Zenon for claiming his total compensation benefits after that date; and (4) Zenon was entitled to an award for the permanent partial (20%) impairment to his left arm.

By operation of law, the ALJ's decision was affirmed by the BRB.[2] Both parties seek review. We review the ALJ's factual determinations under the substantial evidence standard and his resolution of legal issues *de novo*. *Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 688 (5th Cir. 1996).

II.

---

[1] This position would entail much of the same work of an ordinary walking foreman's position, but with fewer and less taxing physical demands.

[2] If the BRB does not take action on an ALJ's decision within one year, the decision is deemed affirmed as a matter of law. *See* Omnibus Consolidated Rescissions and Appropriations Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996).

Pursuant to the settlement agreement and stipulation, Port Cooper paid Zenon temporary total disability from October 10, 1988 (one week following Zenon's first injury), to April 23, 1989, and from April 15, 1991 (the date of Zenon's first shoulder surgery), to February 17, 1992. These payments are not in dispute. What is contested is whether Port Cooper was obligated to continue paying Zenon temporary total disability benefits after February 17, 1992.

Under the stipulation, Port Cooper is obligated to pay Zenon temporary total disability benefits "once surgery is performed for a time period to be determined by the treating physician [Dr. Bryan]." Surgery was performed on April 15 and September 17, 1991. The factual question before the ALJ was the date on which Dr. Bryan determined that Zenon should stop receiving temporary total disability benefits. Both parties agree that this question is integrally tied to the interpretation of the following sentence of the stipulation: "It is stipulated that a release to light duty work will allow [Zenon] to return to his job as a walking foreman under normal circumstances."[3]

Zenon apparently was released by Dr. Bryan to light duty work following each of his shoulder operations: in July 1991 and on May 5, 1992 (with subsequent revisions to the terms of his release promulgated on September 30, 1992, and October 7, 1992). As stated, the parties do not litigate whether the July 1991 release

[3] We also find this determination linked to the separate issue of whether Zenon has achieved maximum medical recovery, because at that point he no longer would be entitled to *temporary* total disability, but rather to *permanent* total disability. *See infra*.

5

discharges Port Cooper of its obligations under the stipulation, so we will not consider that date in our analysis.[4]

Each side goes to great lengths to explain the meaning of the above-quoted language. Zenon claims that the phrase "under normal circumstances" means "without significant restrictions" and modifies "release." That is, because Zenon's release was accompanied by lifting and climbing restrictions, he contends he was not released to work "under normal circumstances," therefore obligating Port Cooper to continue making total disability payments. Conversely, Port Cooper contends that "under normal circumstances" modifies "walking foreman" and that a release to light duty work means (by power of the stipulation) that Zenon could return to his job as a walking foreman under normal circumstances (that is, so long as no additional burdens are added to the responsibilities of the walking foreman).

The ALJ appears to have read the stipulation as meaning that Port Cooper was obligated to make disability payments until such time as Zenon was able to return to his former position of walking foreman. "Under normal circumstances," therefore, was interpreted by the ALJ to apply to the conditions of Zenon's release, in that a release with significant restrictions would not enable him to return to his job as walking foreman and thus would not constitute

---

[4] Unfortunately, Zenon, Port Cooper, and the ALJ seem to have overlooked the effect of Dr. Bryan's July 24, 1991, statement regarding Zenon's employability. Under the terms of the stipulation, which were controlling from April 15, 1991 (the date of Zenon's first shoulder surgery), Port Cooper would be relieved of its obligation to provide Zenon with temporary total disability compensation at that time "determined by the treating physician." Dr. Bryan's July 24, 1991, statement appears to serve as such a release. Because, however, this has not been argued by either party, we decline to decide it.

6

a determination by Dr. Bryan that Zenon could return to work under the stipulation.

The application of conventional canons of construction lead us to read "under normal circumstances" as referring unambiguously to "walking foreman." Thus, a release to light duty work permits Zenon to return to his former position of walking foremanSSthat is, a walking foreman "under normal circumstances."

We therefore remand this matter to the ALJ for a determination of the date on which Zenon was released to light duty work; on that date, his temporary total disability benefits should cease. Should the ALJ find that Zenon was never released to light duty work, then Zenon's temporary total disability payments must nevertheless cease on September 30, 1992SSthe date of maximum medical recovery.[5]

## III.

The ALJ awarded Zenon permanent total disability payments following September 30, 1992, the date of maximum medical recovery. Zenon, however, was not entitled to permanent total disability payments under the terms of the stipulation, but only to *temporary* total disability. Because his claim for permanent total disability payments is not covered by the stipulation, Zenon must establish

---

[5] This issue of fact has already been determined by the ALJ, and we uphold it because it is supported by substantial evidence. Once the date of maximum medical recovery is reached, compensation entitlements switch from "temporary" to "permanent." *Cf. SGS Control Servs. v. Director, Office of Worker's Compensation Programs*, 86 F.3d 438, 443-44 (5th Cir. 1996).

his right to such compensation under the provisions of the LHWCA.[6]

An employee is entitled to compensation under the LHWCA when he suffers "accidental injury or death arising out of and in the course of employment." *Shell Offshore, Inc. v. Director*, *Office of Worker's Compensation Programs*, 122 F.3d 312, 316 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1563 (1998) (citing 33 U.S.C. § 903). Zenon has assuredly satisfied the injury element, leaving causation to be established. Under 33 U.S.C. § 920(a), courts presume that an injury was causally related to an employee's work when he produces evidence of an accident at work or of conditions at work that could have caused such an injury. *Gooden v. Director*, *Office of Worker's Compensation Programs*, 135 F.3d 1066, 1068 (5th Cir. 1998). Zenon has met this requirement, for he has produced evidence of an accident at work.

Port Cooper has challenged Zenon's *prima facie* LHWCA claim by offering evidence that rebuts the presumption of causation. *See id.* This obliges the ALJ to consider and discuss all of the record before deciding causation.[7] The ALJ did not do so, for he based his award on the stipulation. Therefore, we remand the issue of

---

[6] Because of the context of this stipulation within a LHWCA claim, we infer that the physician's determination needed to cut off Zenon's temporary total disability payments can be either one indicating that he may return to his former job (in which case his temporary total benefits would cease), or one indicating that he may not ever return to his former work (in which case he has reached the point of maximum medical recovery, and his temporary total benefits are replaced by permanent total benefits).

[7] *See* 33 U.S.C. § 919(d) (requiring benefit decisions issued by an ALJ pursuant to the LHWCA to comply with the Administrative Procedures Act, 5 U.S.C. §§ 554, 556, 557, which compels that decisions rendered by an ALJ contain "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record"); *see also Gooden*, 135 F.3d at 1068; *McCurley v. Kiewest Co.*, 22 BRBS 115, 119-20 (1989).

permanent total disability payments so that the ALJ can resolve the causation issue in accordance with the guidelines set forth in the LHWCA and the Administrative Procedures Act.

## IV.

Port Cooper contends that its April 1992 offer of employment constitutes "suitable alternative employment" and terminates Zenon's right to receive total disability payments, temporary or permanent. Zenon argues that the offer was not made in good faith and does not measure up to the standard of "suitable alternative employment" as enunciated by this court. *See Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 688 (5th Cir. 1996).

The doctrine of suitable alternative employment derives from the fact that one who is employable is no longer totally disabled. To demonstrate that Zenon is employable, Port Cooper must produce evidence that answers the following questions:

> (1) Considering claimant's age, background, etc., what can a claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is likely to compete and which he could realistically likely secure.

*New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042 (5th Cir. Unit A Nov. 1981). Port Cooper can satisfy its burden by offering a job that Zenon is able to perform. *See Darby*, 99 F.3d at 688.

The ALJ correctly found that Port Cooper's offer qualified.

9

This finding is factual in nature, so we will not disturb it unless it lacks substantial evidentiary basis.  Because the record is replete with evidence suggesting that the job offer matched Zenon's abilities, we find no error.

V.

As with an award for permanent total disability, any award for permanent partial compensation requires a showing of causation, for the stipulation does not cover this claim.  Contingent, therefore, upon a finding of causation, Zenon is entitled to a permanent partial disability award for his shoulder injury.[8]

Both parties agree that the ALJ erred as a matter of law by awarding benefits for a scheduled injury to the left arm when, instead, Zenon had suffered a non-scheduled injury to his left shoulder.  The receipt of a *bona fide* job offer from Port Cooper precludes Zenon from recovering permanent partial disability payments for this non-scheduled injury.  *See Welch v. Leavey*, 397 F.2d 189, 191 (5th Cir. 1968).

The petition for review is GRANTED, and the decision of the BRB is AFFIRMED IN PART and REVERSED and REMANDED IN PART, in accordance with this opinion.

---

[8] We note, for the sake of clarity, that the stipulation did not concede causation for the injury giving rise to Zenon's temporary total disability compensation, but rather merely provided for such compensation.  A finding of no causation of the issue of permanent partial disability *a fortiori* constitutes a finding of no causation on the issue of temporary total disability, as well.