# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2012

No. 11-60532
Summary Calendar

Lyle W. Cayce
Clerk

ISLAND OPERATING COMPANY, INCORPORATED; LOUISIANA
WORKERS' COMPENSATION CORPORATION,

Petitioners

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US
DEPARTMENT OF LABOR; ARCHIE CRAWFORD,

Respondents

Petition for Review from an Order of the
Benefits Review Board
BRB No. 10-0688

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Petitioners Island Operating Company, Incorporated and Louisiana
Workers' Compensation Corporation appeal the order of the Benefits Review
Board upholding an administrative law judge's award of disability benefits to
Respondent Archie Crawford. For the following reasons we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-60532

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent Archie Crawford ("Crawford") was employed by Petitioner Island Operating Company, Incorporated ("Island") as a lead operator on an offshore oil production platform. On the morning of Wednesday, March 12, 2008, Crawford was taken by helicopter to an offshore platform at West Cameron 586 to begin a week-long shift. While disembarking from the helicopter, Crawford's knee buckled, and he fell down two stairs. Crawford filled out an accident report that day indicating that he bruised and scraped his right knee and sustained bruises on his right side. Crawford testified that he performed his job duties for the remainder of the day, but when he awoke the following morning, he experienced numbness in his left foot and three of the fingers on his left hand. Crawford testified that he asked his supervisor, Joe Pesche ("Pesche"), to send a replacement to relieve him so that he could be examined by a physician. There were no physicians on the platform. Crawford testified that Pesche denied his request because a replacement was not available.

Crawford's condition continued to worsen in the days that followed. Crawford testified that on Friday, March 14, 2008, he experienced numbness in his upper body and that he continued his requests to be relieved from his post and taken to a physician. Crawford further testified that on Saturday, his chest felt numb, and the numbness was more pronounced than it had been on previous days. Crawford indicated that he continued requesting relief. According to Crawford, his condition stabilized on Sunday, but he could not walk. Crawford was replaced by a relief operator on Monday, March 17, 2008, and was taken by helicopter to Lafayette General Medical Center where physicians diagnosed him with a stroke. Crawford has not returned to any kind of work following this diagnosis.

Crawford filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, which Island and

2

No. 11-60532

Louisiana Workers' Compensation Corporation (collectively "Petitioners") contested. An administrative law judge ("ALJ") concluded that Crawford's stroke was a preexisting condition that was not caused by Crawford's work, but that the stroke was aggravated by his working conditions because of the time Crawford spent on the offshore platform before he was able to seek treatment. Crawford had also suffered a shoulder injury, which the ALJ found was caused by Crawford's fall. Ultimately, the ALJ awarded Crawford compensation for temporary total disability under 33 U.S.C. § 908(b) for the time period from March 17 to April 2, 2008, and continuing compensation for permanent total disability under 33 U.S.C. § 908(a). The ALJ also held Petitioners liable for the medical expenses related to Crawford's stroke and shoulder injury under 33 U.S.C. § 907.

Petitioners appealed the ALJ's decision and order to the Benefits Review Board ("BRB"), contending that the ALJ erred in finding that Crawford's working conditions aggravated his stroke. The BRB affirmed the decision and order of the ALJ, and Petitioners now appeal the order of the BRB.

## II. DISCUSSION

*A. Standard of Review*

The BRB hears appeals "raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under [the LHWCA]." 33 U.S.C. § 921(b)(3). "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." *Id.* "Substantial evidence is evidence that provides 'a substantial basis of fact from which the fact in issue can be reasonably inferred.'" *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1006 (5th Cir. 1978) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 299 (1939)). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It

No. 11-60532

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Columbian Enameling & Stamping Co.*, 306 U.S. at 300 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, the BRB lacks statutory authority to conduct a "*de novo* review of the evidence or to substitute its views for those of the ALJ." *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991).

"Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c). "[O]ur review of BRB decisions is limited to considering errors of law and ensuring that the Board adhered to its statutory standard of review, that is, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Port Cooper/T. Smith Stevedoring Co. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000); *see also Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1011 (5th Cir. 1981) ("Courts of Appeals examine BRB decisions for errors of law and to make certain that the BRB has adhered to its scope of review. We likewise follow a substantial evidence standard."). "[W]e 'may not substitute [our] judgment for that of the ALJ, nor may we reweigh or reappraise the evidence,' instead we inquire whether there was evidence supporting the ALJ's factual findings." *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1002 (5th Cir. 1995) (quoting *Empire United Stevedores v. Gatlin*, 936 F.2d 819, 822 (5th Cir. 1991). "Moreover, if supported by the evidence and not inconsistent with the law, the administrative law judge's inference is conclusive." *Fulks*, 637 F.2d at 1011; *see also Avondale Indus., Inc. v. Dir., Office of Workers' Comp. Programs*, 977 F.2d 186, 189 (5th Cir. 1992) ("The substantial evidence standard is less demanding than that of preponderance of the evidence, and the ALJ's decision need not constitute the sole inference that can be drawn from the facts.").

No. 11-60532

*B. Compensation under the LHWCA*

Under 33 U.S.C. § 903(a), the LHWCA provides for compensation for "disability or death of an employee . . . if the disability or death results from an injury occurring upon the navigable waters of the United States." The LHWCA defines an "injury" as "accidental injury or death arising out of and in the course of employment . . . ." 33 U.S.C. § 902(2). "The words 'arising out of' instruct that the employment must have caused the injury." *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1049 (5th Cir. 1983). "Aggravation of a preexisting condition can be an injury under the [LHWCA]." *Id.* at 1049; *see also Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986); *Cooper Stevedoring of La., Inc. v. Washington*, 556 F.2d 268, 271 (5th Cir. 1977) (discussing the "well-established principle that aggravation of a preexisting condition is compensable under the [LWHCA]"). The aggravation rule requires an employer "to compensate an employee for the full extent of the employee's disability, including any preexisting disability that the work-related injury worsens." *Strachan*, 782 F.2d at 515.

Under § 920(a), a claim is presumed to come within the provisions of the LHWCA in the absence of substantial evidence to the contrary. "[I]nherent in this provision is the presumption that an injury is causally related to a worker's employment." *Port Cooper*, 227 F.3d at 287. Thus, to invoke the presumption under § 920(a), "the claimant must make a *prima facie* showing of causation." *Id.* This requires a claimant to prove "(1) that he or she suffered harm, and (2) that conditions existed at work, or an accident occurred at work, that could have caused, aggravated, or accelerated the condition." *Id.*; *see also Gooden v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 135 F.3d 1066, 1068 (5th Cir. 1998); *Wheatley v. Adler*, 407 F.2d 307, 313 (D.C. Cir. 1968) (stating that evidence showing that there is "realistic possibility" that an injury was work related "suffced . . . to require substantial evidence in refutation").

No. 11-60532

Once a claimant makes a prima facie case of causation, the burden shifts to the employer to rebut it with "substantial evidence to the contrary." *See* 33 U.S.C. § 920(a); *Port Cooper*, 227 F.3d at 288 ("A presumption can be rebutted by an employer through substantial evidence establishing the absence of a connection between the injury and the employment."). As stated above, "this evidentiary standard is less demanding than the ordinary civil requirement that a party prove a fact by a preponderance of evidence." *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003) (emphasis omitted). "If the employer rebuts the presumption, then the issue of causation must be decided by looking at all the evidence of record." *Gooden*, 135 F.3d at 1068.

## C. Crawford's Claim

Petitioners in this case challenge the ALJ's finding that Crawford was entitled to the presumption under § 920(a) that working conditions had aggravated the disability resulting from Crawford's stroke.[1] Petitioners contend that Crawford failed to prove that working conditions or a work-related injury aggravated his stroke. Petitioners highlight that the ALJ concluded that Crawford's stroke was a preexisting condition that likely began before Crawford fell on the steps and was unrelated to work. They further assert that Crawford did not report that he was experiencing the symptoms of a stroke until at least twenty-four hours after his fall. However, Dr. Wael Karim, the neurologist who treated Crawford at Lafayette General Medical Center, testified that a stroke such as Crawford's would cause permanent and irreversible damage, except in some cases where blood thinner is administered within three hours of the stroke's onset. Consequently, Petitioners contend that Crawford's stroke had already caused permanent and irreversible damage by the time Crawford reported his symptoms. Thus, according to Petitioners, the aggravation of

---

[1] On this appeal, Petitioners focus solely on the issue of aggravation and do not challenge any rulings related to Crawford's shoulder injury or the cause of Crawford's stroke.

No. 11-60532

Crawford's condition was caused solely by Crawford's own inaction and could not have been caused by his working conditions, meaning that Crawford did not present sufficient evidence to entitle him to the presumption under § 920(a).

Petitioners liken this case to *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046 (5th Cir. 1983). In *Bludworth*, Alphonso Lira ("Lira") brought a claim under the LHWCA seeking compensation for, *inter alia*, the cost of a drug detoxification program. *Id*. at 1048–49. Prior to working for Bludworth Shipyard, Inc. ("Bludworth"), Lira was addicted to heroin. *Id*. at 1048. While working at Bludworth, Lira injured his back and received pain-killing narcotics as part of his treatment. *Id*. at 1048–49. Shortly thereafter, Lira began using heroin again, and he contended that his work-related injury had aggravated his preexisting condition (i.e., his propensity to use heroin). *Id*. at 1049. The BRB determined that Bludworth had failed to rebut the presumption that Lira's readdiction was caused by his work injury, but this court reversed. *Id*. at 1049, 1052–53. Stressing that Lira had failed to disclose his past drug use on his employment application because "he did not think he would get the job if he told the truth" and that he again deliberately failed to disclose his past drug use to the physicians treating him for his back injury, this court ruled that Lira's deliberate failure to disclose his past drug use "overpowered and nullified the causal connection between his prior back injury and his subsequent readdiction to heroin." *Id*. at 1048, 1051.

The instant case, however, is distinguishable from *Bludworth*. In *Bludworth*, the court was clear that its "holding stands for the limited proposition that an employee's *unjustified, intentional misconduct* may constitute an intervening cause in circumstances presented here." *Id*. at 1052 (emphasis added). The court further stated that, "[i]f the remote consequences are the direct result of the employee's *unexcused, intentional misconduct*, and are only the indirect, unforeseeable result of the work-related injury, the

7

employee may not recover under the LHWCA." *Id.* at 1051 (emphasis added). Petitioners have not set out any evidence suggesting that Crawford engaged in any sort of misconduct by failing to report his symptoms more quickly than he ultimately did. To the contrary, evidence suggests Crawford merely sought to continue performing his normal work duties until his symptoms prevented him from doing so. In the absence of any allegations of misconduct, *Bludworth* does not govern our analysis.

Petitioners further contend that the instant case resembles *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283 (5th Cir. 2003). In *Charpentier*, Zeby Charpentier ("Charpentier") came to work while he was having a heart attack, which escalated into a full-blown cardiac arrest within roughly fifteen minutes of his arrival at work. *Id.* at 286. In addressing whether Ortco Contractors, Inc. ("Ortco") had rebutted the presumption of causation under § 920(a), the court highlighted that "according to un-rebutted medical testimony—[Charpentier's heart attack] would have escalated to a fatal cardiac arrest no matter where he was at that time, with the possible exception of the hospital." *Id.* at 291. The court further stated:

> To apply the aggravation rule in this context would empty it of any meaning under the LHWCA. If an employee's pre-existing injury would *necessarily* be exacerbated by *any* activity regardless of where or when this activity takes place, and an employee happens to go to work, it is an impermissible leap of logic to say that there must be a causal connection between the worsening of the employee's injury and his work.

*Id.* at 292. The court subsequently concluded that "Petitioners submitted substantial evidence sufficient to rebut Charpentier's § [9]20(a) presumption, and this evidence established that [Charpentier's] death at his place of employment was, in essence, a coincidence." *Id.* at 293.

No. 11-60532

Unlike the instant case, however, *Charpentier* addressed whether the presumption under § 920(a) had been rebutted. Here, the inquiry focuses instead on whether Crawford set out sufficient facts to entitle him to the § 920(a) presumption.[2] As discussed above, this is a relatively low threshold to meet and requires Crawford to set out that "conditions existed at work . . . *could have* caused, aggravated, or accelerated" his stroke. *See Port Cooper*, 227 F.3d at 287 (emphasis added). The three-hour time frame Dr. Karim discussed as being particularly critical in treating Crawford's stroke was not necessarily the only time period relevant to Crawford's treatment. Dr. Karim repeatedly stressed in his testimony that treatment should be administered as soon as possible. He further testified that post-stroke treatment includes controlling a patient's blood pressure, diabetes, and stopping the patient from smoking. Moreover, although there was some evidence to the contrary, Crawford testified that he repeatedly requested to be relieved from his post on the offshore platform so that he could receive treatment. As a consequence, we agree with the BRB that substantial evidence supports the ALJ's inference that the damage caused by Crawford's stroke was aggravated by the six days he spent on the offshore platform before he received treatment. *See Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500 (5th Cir. 1995) ("The ALJ's selection among inferences is conclusive if supported by

---

[2] The ALJ in this case acknowledged that there was some evidence that Crawford did not take the earliest opportunity to return onshore but ultimately concluded that Petitioners did not present substantial evidence to rebut the presumption that working conditions aggravated Crawford's stroke-related disability. As the BRB noted in its decision and order, Petitioners did not challenge this finding on appeal to the BRB, and instead only contended that Crawford had not established entitlement to the presumption under § 920(a). On the appeal to this court, Petitioners contend that they produced sufficient evidence to rebut the presumption that working conditions aggravated Crawford's condition. However, Petitioners have waived this argument by failing to raise it before the BRB, and as a consequence, we decline to address the merits of this argument. *See Aetna Cas. & Sur. Co. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 97 F.3d 815, 819 (5th Cir. 1996) (finding waiver of an argument not raised before the BRB); *Superior Boat Works, Inc. v. Cremeen*, 303 F. App'x 183, 188 (5th Cir. 2008) ("Superior did not challenge the ALJ's decision before the [BRB] and, thus, has waived this issue on appeal.").

No. 11-60532

the evidence and the law."). Thus, Crawford was entitled to the presumption under § 920(a). Because this is the only issue properly preserved on appeal, we AFFIRM the order of the BRB upholding the ALJ's decision and order awarding compensation to Crawford.

### III. CONCLUSION

For the reasons stated above, the order of the BRB is AFFIRMED.