**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 21, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-60447
Summary Calendar

_____

ORTCO CONTRACTORS, INC; LOUISIANA WORKERS'
COMPENSATION CORPORATION,

                                        Petitioners,

versus

LYNETTE CHARPENTIER, Widow of Zeby Charpentier, Jr;
DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, US DEPARTMENT OF LABOR,

                                        Respondents.

_____

Petition for Review of an Order
of the Benefits Review Board

_____

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

Wiener, Circuit Judge:

Petitioners Ortco Contractors, Inc. ("Ortco") and Louisiana Workers' Compensation Corporation (collectively, "Petitioners") seek our review of the Benefits Review Board's ("BRB") order affirming the administrative law judge's ("ALJ") determination, following an initial reversal and remand by the BRB, that Respondent Lynette Charpentier is entitled to benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). We conclude that the BRB used an improper evidentiary standard in its review of the ALJ's initial determination, and that the ALJ had

reached the correct result in his initial holding, <u>viz.</u>, that Petitioners had successfully rebutted Charpentier's presumed <u>prima facie</u> entitlement to benefits under the LHWCA. We therefore grant the petition for review, vacate the BRB's decisions, and remand with instructions.

## I. FACTS AND PROCEEDINGS

The origin of this case was the death of Zeby Charpentier ("Decedent"), a painter who died shortly after reporting to work one morning. His death was the culmination of a heart attack that had manifested symptoms the prior evening, when the Decedent complained to his wife about "heartburn." Presumably unaware of the seriousness of his medical condition, Decedent sought no medical attention that night or the next morning; he merely purchased some over-the-counter palliative medication that morning on his way to his painting job with Ortco. Within approximately 15 minutes after starting work, Decedent's ongoing heart attack escalated to a full-blown cardiac arrest. Efforts by medical personnel failed to revive him.

As Decedent's widow, Lynette Charpentier filed a claim for general death benefits and coverage of funeral expenses under the LHWCA.[1] In April 2000, the ALJ denied her claim, finding first that she had failed to establish a <u>prima facie</u> case that Decedent's injury was work-related; then proceeding on the assumption of a

---

[1] 32 U.S.C. § 909.

prima facie case but concluding that Petitioners had rebutted the presumption of coverage and of work-related injury or aggravation. Specifically, the ALJ noted that "there is no evidence of any strenuous activity or stressful situation associated with [Decedent's] employment which could have caused, aggravated or accelerated his condition."

In reaching his decision, the ALJ relied on the testimony of three physicians that Decedent's heart attack and his resulting death were not work-related. Dr. Joseph Tamimie reported this conclusion unequivocally and unconditionally. Dr. Walter Daniels initially believed that Decedent's death "may have been work related," but ultimately agreed with Dr. Tamimie's conclusions after reading his report. Finally, Dr. Clement Eiswirth, a cardiologist, testified, according to the ALJ, that Decedent "would have died no matter where he was or what he was doing because the only action that would have affected the outcome would have been if [Decedent] had gone to the hospital." Dr. Eiswirth also stated that "the only connection between [Decedent's] death and his employment was the fact that [Decedent] was at work when the heart attack process concluded." All three doctors confirmed that the medical records indicate that the heart attack began the previous evening, while Decedent was at home, and progressed continually until his fatal cardiac arrest the next morning.

After the ALJ denied Charpentier's petition for reconsideration, she appealed to the BRB. In an unpublished

3

opinion, dated May 9, 2001, the BRB vacated the ALJ's decision and remanded for further proceedings. The BRB first noted that, under the LHWCA, Charpentier had established her prima facie case when she showed that Decedent died at his place of employment, which creates a presumption in favor of coverage under the LHWCA (the "§ 20(a) presumption").[2] The BRB ruled that if the Petitioners could not affirmatively rebut the § 20(a) presumption, Charpentier would be entitled to benefits under the LHWCA.

The BRB then assessed whether Petitioners had successfully rebutted Charpentier's § 20(a) presumption. The three physicians who testified on behalf of Petitioners, the BRB noted, "could not rule out" that Decedent's employment contributed to the fatal result of his heart attack. The BRB further explained that "none of these physicians unequivocally state [sic] that decedent's work activities on October 12, 1996, did not contribute to or accelerate his death." The BRB therefore remanded the case to the ALJ, ruling that Charpentier met the § 20(a) presumption and that Petitioners had failed to rebut it.

On remand, the ALJ did not hear any further testimony or receive any additional evidence. In his second opinion, the ALJ simply stated that Charpentier met her prima facie case, and that, under the evidentiary standard set by the BRB in vacating the ALJ's prior decision, the Petitioners had failed to rebut Charpentier's

---

[2] 33 U.S.C. § 920(a).

4

§ 20(a) presumption.  The ALJ awarded Charpentier LHWCA benefits, and Petitioners appealed to the BRB.

In a terse, unpublished opinion, the BRB affirmed the ALJ's decision following remand.  The BRB noted that, under the law of the case doctrine, it was bound by its own prior decision, in which it recognized that Petitioners' physicians "did not affirmatively state that the decedent's employment duties did not aggravate his underlying condition to result in death, or hasten the decedent's death."  Petitioners timely filed a petition for review.

## II.  ANALYSIS

A.    Standard of Review.

Our review of the BRB is limited in scope to "considering errors of law and making certain that the BRB adhered to its statutory standard of review of factual determinations, that is, whether the ALJ's findings of fact are supported by substantial evidence and [are] consistent with the law."[3]

B.    The Evidentiary Standard For Rebutting The § 20(a) Presumption Under The LHWCA.

Under the LHWCA, a claimant like Charpentier has the burden of proving a prima facie case for coverage, viz., that (1) an injury was suffered, and (2) the injury occurred in the course of employment or was caused, aggravated or accelerated by conditions

---

[3] Avondale Shipyards, Inc. v. Kennel, 914 F.2d 88, 90 (5th Cir.1990) (quoting Miller v. Central Dispatch, Inc., 673 F.2d 773, 778 (5th Cir. Unit A 1982)).

5

at the work place.[4]  A claimant's proof of these two predicates triggers § 20(a)'s presumption that the injury is work-related and that the claimant is entitled to coverage.[5]  To avoid coverage, the employer must affirmatively rebut this presumption with "substantial evidence to the contrary."[6]  We have repeatedly held that this evidentiary standard is less demanding than the ordinary civil requirement that a party prove a fact by a preponderance of evidence.[7]

In the instant case, Petitioners contend that the BRB used an improper evidentiary standard when it reviewed the ALJ's first decision.  We agree.  In vacating the ALJ's first decision and affirming the second following remand, the BRB expressed several different formulations of the requirement imposed by the LHWCA for proving that an injury is not work-related: (1) "rule out," (2) "unequivocally state," and (3) "affirmatively state."  These evidentiary standards, Petitioners maintain, run afoul of our holding in Conoco that the BRB cannot require employers to rebut a § 20(a) presumption by "ruling out" every conceivable connection between the injury and the claimant's employment.  The LHWCA requires a lower evidentiary standard than this —— the employer

_____

[4]  Conoco v. Director, Office of Worker's Compensation Programs, U.S. Dep't of Labor, 194 F.3d 684, 687 (5th Cir. 1999).

[5]  33 U.S.C. § 920(a).

[6]  Id. (emphasis added).

[7]  See, e.g., Avondale Shipyards, Inc., 914 F.2d at 91.

6

must adduce only <u>substantial</u> <u>evidence</u> that the injury was not work-related.[8]

Charpentier, the Director of the Office of Worker's Compensation, and the U.S. Departmant of Labor (collectively, "Respondents"), nevertheless, urge us to affirm the BRB's decisions. They invite us to consider the BRB opinions that state explicitly that "a medical opinion does not have to rule out every possibility that the injury or death might be work related." The BRB used the term "rule out" here, they maintain, only to paraphrase Dr. Eiswirth's answer to Charpentier's counsel's question on whether he could "rule out" that Decedent's exertion at his job was a contributing factor to the fatality of his heart attack. Dr. Eiswirth replied: "No, I cannot" –– meaning, he could not rule out this possibility with absolute, 100% certainty. Respondents maintain that we should not penalize the BRB for this single use of the term "rule out," and that we should recognize that the BRB carefully reviewed the entire record and correctly determined that Petitioners did not meet the "substantial evidence" requirement.

Respondents are correct that the BRB, in repeating the obligatory standard of review in each opinion, recognized that its review of an ALJ's decision is limited to whether "substantial evidence" has been submitted to rebut a § 20(a) presumption. Yet,

---

[8] <u>Conoco</u>, 194 F.3d at 690.

after giving lip service to this standard of review, the BRB proceeded to disregard it entirely, repeatedly violating the correct standard in the wording and substance of its opinion. In its initial ruling in this case, the BRB found that the testifying physicians "could not rule out" that Decedent's death was work-related. The BRB also stated that these physicians could not "unequivocally state" that Decedent's death was not work-related. Again, when reviewing the ALJ's decision following remand, the BRB explained that Petitioners' physicians "did not affirmatively state" and "did not unequivocally state" that Decedent's heart attack was not aggravated by his work conditions. In making such evidentiary demands on Petitioners, the BRB flagrantly violated our decision in Conoco that the BRB cannot create a higher evidentiary hurdle than the "substantial evidence" standard expressly stated in the LHWCA.

First, the BRB's determination that Petitioners' testifying physicians "could not rule out" that Decedent's death was work-related is in direct violation of our holding in Conoco that the BRB may not use this standard in assessing evidence under the LHWCA. The BRB's post hoc rationalization in a footnote of its second opinion that it was simply paraphrasing Charpentier's question of Dr. Eiswirth falls well short of the mark. Simply because a physician answers a question in a deposition that he cannot "rule out" every conceivable causal connection between a claimant's employment and an injury does not justify the BRB's

8

reliance on such an answer as a de facto evidentiary standard under the LHWCA. Charpentier's demand that Dr. Eiswirth "rule out" every possible nexus between Decedent's death and the work conditions clearly asked more of Dr. Eiswirth than is required under the LHWCA. The BRB may not permit an expressly discredited evidentiary standard to slip into its review of claims under the LHWCA simply because it is able to discern this standard directly from the words of an expert witness's testimony.

Second, Respondents efforts to rehabilitate the BRB's specific use of the term "ruling out" as innocent is belied by the substance of the BRB's two opinions in this case. In addition to embracing Dr. Eiswirth's failure to "rule out" any possibility, however remote, that Decedent's death was work-related, the BRB stated repeatedly that Petitioners' failed their evidentiary burden under the LHWCA because the physicians did not "unequivocally state" or "affirmatively state" that there was no conceivable connection between Decedent's fatal heart attack and his work conditions. This sets up a far more demanding evidentiary standard than is specified by the plain words of the LHWCA.

In fact, we perceive no distinction between (1) "unequivocally" or "affirmatively" stating that an injury is not work-related, and (2) "ruling out" the possibility that an injury is work-related. This is a classic distinction without a difference. The meaning of these evidentiary demands is the same. The BRB cannot allow the previously rejected "ruling out" standard

9

to seep interstitially into its opinions by simply rephrasing it in more innocuous terms.

In ignoring Conoco's injunction that it follow the express terms of the LHWCA, the BRB appears to have failed to read the Conoco decision in its entirety: The Conoco court already rejected similar formulations of the evidentiary standard that the BRB invokes in the instant case. In Conoco, the BRB had affirmed an ALJ's decision that an employer must "rule out" all possible causal connections between an injury and a claimant's employment conditions to rebut the § 20(a) presumption. We did not merely rebuke the ALJ (and the BRB) for illegitimately engrafting this extra-statutory requirement on the LHWCA; we also recognized that the ALJ relied on various formulations of the phrase "rule out," quoting from the ALJ's decision that "the [§ 20(a)] presumption must be rebutted with specific and comprehensive medical evidence proving the absence of, or severing, the connection between harm and employment."[9] We then held such formulation to be equally repugnant to the LHWCA, noting that "this requirement..., like the 'ruling out' standard..., would be incorrect."[10] If an employer need not submit "specific and comprehensive" evidence to rebut the

_____

[9] Id. at 688 n.1 (quoting the ALJ's opinion).

[10] Id. Furthermore, in the text of the opinion, we summarized the ALJ's and BRB's requirement that an employer has a "burden to present specific and comprehensive evidence to rebut the [§ 20(a)] presumption," id. at 689, and we again criticized this as an "incorrect burden." Id. at 690.

10

§ 20(a) presumption, it clearly cannot be required to submit "unequivocal" evidence to do so. If a phrase is proscribed, so is its synonym.

We thus reaffirm the holding of the <u>Conoco</u> court that the evidentiary standard for rebutting the § 20(a) presumption is the <u>minimal</u> requirement that an employer submit only "substantial evidence to the contrary." We continually affirm the BRB and ALJs on the substantial evidence standard; they must learn to apply that standard to employers as well as to employees:

> The language [of the LHWCA] does not require a "ruling out" standard; indeed, the hurdle is far lower. Indeed, the plain language of the statute uses the phrase "substantial evidence to the contrary." To place a higher standard on the employer is contrary to statute and case law. We therefore unequivocally reject the "ruling out" standard applied by the [BRB] in this case.[11]

The plain terms of the LHWCA precludes the BRB from fabricating a stricter evidentiary standard, regardless of how it may be verbalized — whether it is in terms of "specifically and comprehensively" stating, "ruling out," "unequivocally stating," "affirmatively stating," or some other as yet-to-be articulated phrase. Considerable time, money and judicial resources could be saved by a straightforward application of the words and requirements of the LHWCA.

C.   <u>The ALJ Reached the Right Result the First Time</u>.

Once an employer successfully rebuts a § 20(a) presumption by

---

[11] <u>Id.</u> at 690 (citations omitted).

producing "substantial evidence" —— more than a modicum but less than a preponderance —— that the injury was not work-related, the ALJ must assess the issue of causation by looking at all record evidence.[12] In these cases, the BRB reviews such determinations of the ALJ under the same deferential standard that governs our review: If the BRB determines that the ALJ's decision is "supported by substantial evidence and is in accordance with the law," the ALJ's decision must be affirmed.[13] The BRB "may not substitute its judgment for that of the ALJ, nor may [it] reweigh or reappraise the evidence."[14]

Here, the BRB did not give proper deference to the ALJ's initial assessment of the evidence, incorrectly erecting a higher evidentiary hurdle than the one specified in the LHWCA. Under the proper standard of review, the ALJ's first holding, i.e., that Charpentier was not entitled to LHWCA benefits, was supported by substantial evidence and was consistent with the law. That should have marked the end of the BRB's review.

Nevertheless, the BRB vacated the ALJ's initial decision that Charpentier was ineligible for benefits under the LHWCA on the

---

[12] Gooden v. Director, Office of Worker's Compensation Programs, U.S. Dep't of Labor, 135 F.3d 1066, 1068 (5th Cir. 1998).

[13] Empire United Stevedores v. Gatlin, 936 F.2d 819, 822 (5th Cir. 1991).

[14] Id.

12

basis of the "aggravation rule."[15] This rule specifies that when "an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable."[16]

At first blush, the aggravation rule might appear to weigh in favor of Charpentier's claim. Decedent's heart attack, although clearly having begun the previous evening while he was at home, not work, concluded fatally some fifteen minutes after he started his painting work for Ortco the next morning. Thus, it would appear on the surface that Decedent's pre-existing and ongoing heart attack might have been aggravated by his work, leading to the fatal cardiac arrest. If this assessment were correct, then the ALJ would have erred in failing to acknowledge this causal link in the aggravation of Decedent's heart attack.

We reached such a conclusion in <u>Gooden</u>, when we vacated an ALJ's decision that denied LHWCA benefits. We held that the ALJ improperly focused on the non-work-related <u>origins</u> of an employee's chronic heart <u>condition</u>, which pre-dated by several years the heart

---

[15] <u>See</u> <u>Cairns v. Matson Terminals, Inc.</u>, 21 B.R.B.S. 252 (1988).

[16] <u>Strachan Shipping Co. v. Nash</u>, 782 F.2d 513, 517 (5th Cir. 1986). In the instant case, the BRB explained that the "aggravation rule provides that where an employee's work aggravates, accelerates, or combines with a pre-existing condition, the entire resultant condition is compensable," citing <u>Wheatley v. Adler</u>, 407 F.2d 307, 312 (D.C. Cir. 1968) (en banc).

attack that struck the employee while he was on the job. We stated that "[i]t is well settled that a heart <u>attack</u> suffered in the course and scope of employment is compensable even though the employee may have suffered from a related preexisting heart <u>condition</u>."[17]  Thus, in that case, the ALJ erred in failing to consider the work conditions under which the employee suffered his actual heart attack. We remanded with instructions for the ALJ to make findings that "address the heart attack itself," not the pre-existing heart condition.[18]

Our decision in <u>Gooden</u> is easily distinguishable from the record before us in the instant case. The employee's injury in <u>Gooden</u> —— his heart attack —— began and ended <u>on the job</u>. The injury was the heart attack <u>in</u> <u>toto</u>; only the cardiac <u>disease</u> pre-dated the injury and that was for an extended time. In this case, it is indisputable that Decedent's heart attack began in the evening while he was at home, continued there throughout the night and early morning, and finally concluded in the fatal cardiac arrest 15 minutes into his morning's work. Unlike the situation in <u>Gooden</u>, the heart attack in this case did not begin and end entirely in the context of Decedent's employment. Here, Decedent brought an ongoing heart attack to work with him that morning. And —— according to un-rebutted medical testimony —— it would have

---

[17] <u>Gooden</u>, 135 F.3d at 1069 (emphases added).

[18] <u>Id.</u> at 1069.

14

escalated to a fatal cardiac arrest no matter where he was at that time, with the possible exception of the hospital.

Respondents nevertheless repeat the BRB's contention that Decedent's employment might have contributed to the <u>fatal</u> nature of his heart attack, a possibility that the BRB tries to ascribe to Petitioners' expert witnesses for not having been able to "rule out" or "unequivocally" deny.  The BRB infers this supposition from the fact that Decedent's heart attack, although beginning many hours earlier when he was at home, turned fatal shortly after his arrival at work.  Ergo, reasons the BRB, there is "circumstantial" evidence that Decedent's working conditions aggravated his pre-existing heart attack.  We see this evidence not as circumstantial but as coincidental.

Of course, the BRB was able to draw this inference only because it first rejected the ALJ's detailed findings by employing the impermissibly stringent standard of review that Petitioners' expert witnesses must "rule out" or "unequivocally" deny such a possibility.  In his first decision, the ALJ gave much weight to the testimony of Dr. Eiswirth, a board-certified cardiologist.[19] Dr. Eiswirth related that if "you're having a heart attack and you do <u>any</u> physical activity, you're at increased risk of death." (Emphasis added.)  Dr. Eiswirth further explained, according to the

_____

[19] <u>See</u> <u>Conoco</u>, 194 F.3d at 691 (noting that it is within the discretion of the ALJ to place "greater weight" on one medical expert than another).

15

ALJ, that this meant that "the only action that would have [favorably] affected the outcome would have been if [Decedent] had gone to the hospital." (Emphasis added.) In other words, Decedent could have gone fishing, he could have gone shopping, he could have mowed his lawn or carried in the groceries — he could have engaged in virtually any activity, and not necessarily one involving stress or exertion — and the cardiac arrest still would have occurred. Thus, as the ALJ recognized, it was only happenstance that Decedent was "at work when the heart attack process concluded."

To apply the aggravation rule in this context would empty it of any meaning under the LHWCA. If an employee's pre-existing injury would necessarily be exacerbated by any activity regardless of where or when this activity takes place, and an employee happens to go to work, it is an impermissible leap of logic to say that there must be a causal connection between the worsening of the employee's injury and his work. There is a causal connection between the employee's life activity and his exacerbated injury, but it does not matter whether this activity happened to take place at work or elsewhere. To approve LHWCA benefits in such cases would be to place a thumb on the scale in favor of LHWCA claimants; yet the Supreme Court has expressly disapproved when, in the past, we weighted the LHWCA to the advantage of claimants.[20] There is no

_____

[20] Mendoza, 46 F.3d at 500 n.1 (noting that the Supreme Court explicitly rejected the "true doubt rule," which weighted the LHWCA in favor of claimants by requiring that all doubtful fact questions be resolved in favor of claimants).

16

reason for us —— or the BRB —— to incur the condemnation of the Court by doing so again.

In their appellate briefs, Respondents attempt to buttress the BRB's opinions by labeling as contradictory and speculative the nature of the physicians' testimony, such as Dr. Daniels's changing his conclusion following his review of Dr. Tamimie's report. These arguments miss the point entirely. An ALJ "is a factfinder and is entitled to consider all credibility inferences. He can accept any part of an expert's testimony; he may reject it completely."[21] "The ALJ's selection among inferences is conclusive if supported by the evidence and the law."[22] Based here on substantial evidence and the applicable law, the ALJ found that Petitioners had rebutted the § 20(a) presumption and had established that there was no specific causal connection between Decedent's heart attack turning fatal and his work. And, in doing so, the ALJ relied on evidence that was of significantly greater probative value than substantial. Thus, according to the circumscribed scope of our review, this is a factual finding to which we —— and the BRB —— must defer.[23]

## III. CONCLUSION

Our review of the record satisfies us that, although the ALJ initially erred in ruling that Charpentier failed to make a prima

---

[21] Avondale Shipyards, Inc., 914 F.2d at 91.

[22] Mendoza v. Marine Personnel Co., Inc., 46 F.3d 498, 500 (5th Cir. 1995).

[23] Conoco, 194 F.3d at 690.

17

facie case — indeed, she did — the ALJ's analysis, conclusions, and holdings after assuming arguendo that the claimant had proved a prima facie case, were correct. Petitioners submitted substantial evidence sufficient to rebut Charpentier's § 20(a) presumption, and this evidence established that Decedent's death at his place of employment was, in essence, a coincidence. Accordingly, we vacate both opinions of the BRB and remand with instructions that the case be further remanded to the ALJ for reinstatement of the his initial holding, which denied benefits to Charpentier.

PETITION GRANTED; BRB's RULINGS VACATED; CASE REMANDED WITH INSTRUCTIONS