United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

05-60259
Summary Calendar

---

RICHARD MCBRIDE,

Petitioner,

versus

HALTER MARINE, INCORPORATED, RELIANCE
NATIONAL INDEMNITY COMPANY, in liquidation, by
and through the MISSISSIPPI INSURANCE GUARANTY
ASSOCIATION, DIRECTOR, OFFICE OF WORKER'S
COMPENSATION PROGRAMS, U S DEPARTMENT
OF LABOR,

Respondents.

---

Petition for Review of an Order
of the Benefits Review Board
(04-0508)

---

Before BARKSDALE, STEWART and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Richard McBride ("McBride"), an employee of Halter Marine, Inc. ("Halter"), seeks review

of an order of the Benefits Review Board ("BRB") affirming the Administrative Law Judge's ("ALJ")

fourth and final judgment that McBride's alleged psychological condition is not causally related to

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

on-the-job injuries sustained by McBride in early 1994. Because the ALR's holding and BRB's affirmance are anchored by substantial evidence supporting such a determination, this petition for review is denied, and the decision of the BRB is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

McBride, a shipfitter with Halter, asserts that on March 3, 1994, he was assaulted by a supervisor for being out of his designated area; McBride, then thirty-three, explains that he went to this area to obtain eye lugs. As a result of the assault, McBride claims that he experienced neck, shoulder, throat and back pains and headaches. Furthermore, McBride claims that on April 13, 1994, he was "flipping over bulkheads" when he was lifted off of his feet, injuring his ankle and further injuring his neck and back.

As a result of these injuries, McBride initially sought treatment from Halter's doctor and the emergency room; he was given anti-inflammatory medications and muscle relaxers to help him cope with the pain. Thereafter, McBride consulted his personal physician, Dr. Longnecker, an orthopedic physician, who performed x-rays, prescribed physical therapy, and determined on May 5, 1994, that McBride was not well enough to continue working at Halter. After McBride's MRI came back normal and the physical therapist noted difficulty correlating McBride's subjective complaints with the physical findings, Dr. Longnecker determined that McBride could return to work at "light duty" at Halter on July 19, 1994; he also stated that he did not anticipate McBride having a permanent disability and assigned only temporary restrictions for six to eight weeks, after which McBride would be free to return to normal duty. Dr. Longnecker's final diagnosis was "acute and chronic ligamentous muscular injury." Finally, a subsequent report issued by Dr. Longnecker noted that McBride had no permanent impairment or permanent limitations of any kind.

As a result of his on-the-job injury, McBride was paid temporary total disability benefits for the period that he was under Dr. Longnecker's care. Upon returning to "light duty," Halter found alternative work for McBride paying him his regular wage, but in accordance with company policy, Halter required that McBride undergo drug screening because he had been away from work for more than thirty days. The drug test showed positive for cocaine, and, as a result, McBride was terminated, per company policy.

After his termination, McBride, however, continued to pursue a claim for additional compensation. Initially, he disputed the validity of the drug screen and contested the extent of his physical injuries. Thereafter, more than two and a half years after McBride was injured, at the first administrative hearing regarding this matter McBride alleged that he had also suffered psychological injuries. This was the first time McBride had made this allegation, and the hearing was, therefore, continued to allow him sufficient time to develop evidence of a psychological injury.

A hearing on the merits was finally heard before an ALJ on March 11, 1997, three years after McBride's injury; McBride appeared *pro se.* At the hearing, McBride submitted evidence regarding his physical and psychological treatment. He introduced evidence from Dr. Hearne, a clinical psychologist who began treating McBride in October 1996 and diagnosed McBride with Post Traumatic Stress Disorder ("PTSD"), determining that McBride could not be gainfully employed. Because Dr. Hearne's office was located more than 150 miles from McBride's home, Dr. Hearne referred McBride to Dr. Gutpa, even though Dr. Gutpa lived approximately three hours from McBride's residence.

Dr. Gutpa examined McBride in November of 1996 and subsequently testified that he did not review the tests or reports of Dr. Hearne. Instead, based on the history presented to him by McBride,

3

Dr. Gutpa diagnosed McBride with major depression, psychotic symptoms, and PTSD and determined that McBride was totally disabled.

Thereafter, on February 7, 1997, Halter had McBride evaluated by Dr. Maggio, a board-certified doctor in psychiatry and neurology.[1] In preparation for this evaluation, Dr. Maggio reviewed McBride's extensive medical records. From this information and after meeting with McBride, Dr. Maggio diagnosed him with "adjustment disorder with mixed emotions of anxiety and depression, substance induced psychosis and personality disorder not otherwise specified with features of paranoia." He also determined that McBride was not disabled by this condition, could return to work, and had no symptoms or indicators of PTSD. In the ALJ's original decision on April 17, 1997, he determined that McBride suffered two minor injuries while employed at Halter and concluded that McBride's version of the accounts was "certainly exaggerated." The ALJ did determine, however, that McBride was entitled to temporary total disability benefits from April 14, 1994, when he first took leave from work, through September 18, 1994, the date that McBride was allowed to return to work by the treating physician provided by Halter. The ALJ denied benefits for the remainder of the time finding McBride to be "properly terminated for violating company rules" because Halter provided suitable alternative employment on September 19, 1994, and McBride failed the drug test administered by Halter. Finally, the ALJ considered the evidence offered by Drs. Hearne and Gutpa, but chose to accept the medical opinion of Dr. Maggio instead; he determined that McBride's alleged psychological condition was unrelated to his work injury.

---

[1] The ALJ's final order noted that Dr. Maggio's credentials boosted his credibility; Dr. Hearne holds a doctorate in psychology.

4

McBride appealed the ALJ's findings, and the BRB, on June 5, 1998, reversed the ALJ's order as to the causation of the psychological condition and remanded the case for the ALJ to reconsider the psychological evidence. The BRB also explained that for the ALJ to determine that the § 20(a) presumption in 33 U.S.C. § 920(a) had been rebutted,[2] the ALJ must "unequivocally state that no relationship exists between an injury and Claimant's employment" and that Dr. Maggio's report, upon which the ALJ relied, failed to establish that "claimant's employment did not cause claimant's condition nor aggravate, accelerate, or combine with an underlying condition."

On remand, in the ALJ's second decision dated April 26, 1999, the ALJ indicated that he was compelled by the BRB to find that McBride's psychological condition constituted a work-related injury. Therefore, the ALJ qualified his second holding by stating that "the Board has clearly substituted its opinion for that of this fact-finder who presided over the Hearing, who heard the testimony and observed the demeanor of a less than candid Claimant." The ALJ then stated that "this closed record conclusively establishes Claimant can return to work at Halter's facility, that he did return to work, underwent drug screening and failed the test and was properly terminated on September 18, 1994, for illicit drug use." Finally, he determined that because McBride had never requested or received approval for treatment of his alleged psychological problems, Halter was not

[2]To become eligible for disability and medical benefits under the Longshore and Harbor Workers' Compensation Act a claimant must establish causation between the injury and his job. This is often referred to as a § 20(a) presumption, "which assumes that his injury is causally related to his employment." *Ingalls Shipbuilding, Inc. v. Dir., Office of Worker's Comp.*, 105 Fed. Appx. 567, 571 (5th Cir. 2004) (unpublished).

required to pay past and future medical care for the psychological problems. Accordingly, the ALJ again denied McBride's claim for additional compensation.

On May 7, 1999, McBride filed an appeal of the decision on reconsideration and filed a quasi-notice of appeal with attached newspaper clippings, letters from physicians, and a complaint from an unrelated lawsuit. The BRB then remanded the case to the ALJ with instructions that McBride's modifications be treated as a motion for modification. On January 18, 2000, the ALJ denied modification on the basis that the medical evidence submitted by McBride had already been admitted into evidence or was irrelevant. McBride then filed another appeal; it was consolidated with the ALJ's decision on modification. On January 10, 2001, the BRB responded by vacating the ALJ's decision that McBride's psychological condition was not disabling and remanded the case indicating that the ALJ's decision was not supported by substantial evidence.

The BRB specifically took issue with the ALJ basing his finding on the fact that McBride's psychological condition did not arise until two years after the injury and pointed to the prescription for anxiety medication as evidence to dispute the ALJ's reasoning. The BRB also vacated the ALJ's denial of modification, as it found that the ALJ erroneously determined that some of the newly submitted records had previously been admitted into evidence. The BRB vacated the ALJ's denial of payment for past medical expenses and determined that the ALJ did not address evidence during the hearing that McBride was referred to a mental health care provider by his orthopedist or that McBride requested payment of bills incurred while seeking mental health care. Therefore, on remand, the BRB held that the ALJ must determine "whether [Halter] had previously refused authorization of Claimant's mental health treatment, and, if so, whether such refusal released Claimant from the obligation of continuing to seek approval for his subsequent mental health treatment." The BRB did,

6

however, affirm the ALJ's finding that McBride's travel expenses and medical benefits should be limited to reasonable costs that would have been incurred at a medical facility in McBride's locality.

On remand again to the ALJ, McBride moved to reopen the record to submit an August 20, 2001, report of Dr. Longnecker stating that McBride would not be capable of gainful employment and that even though he had not examined McBride since January 1998, in his opinion, McBride had psychiatric problems that should be treated by a psychiatrist. Dr. Longnecker's report assigned, for the first time, a 5% whole body disability for McBride. Halter opposed this motion, but the ALJ granted McBride's motion to reopen allowing Halter to take the deposition testimony of Dr. Longnecker and obtain other supplemental reports or rebuttal evidence. Halter took Dr. Longnecker's deposition and entered it into evidence. At this time, Dr. Maggio conducted another evaluation of McBride and diagnosed him with Chronic Paranoid Schizophrenia ("CPS"). He concluded, however, that there was no connection between McBride's psychological condition and his work-injuries; Halter also entered this report into evidence.

On April 11, 2002, the ALJ issued another decision. He awarded temporary total disability benefits to McBride in a payment of more than $100,000 on the basis of his alleged psychological injury from the date of the accidents through the present and continuing. The ALJ found that McBride was capable of work and was capable of work in 1994, as Dr. Longnecker had not examined McBride in more than five years and had at one time released him to return to work with "no objective finding to support any permanent disability." As for McBride's psychological claims, the ALJ stated that he believed his initial order awarding benefits, dated April 17, 1997, was correct; however he stated that he felt compelled to find that "as the Board has held the Claimant's psychological problems constitute, as a matter of law, a work-related injury, that is 'the law of the

7

case.'" Further, the ALJ stated that "with the utmost of trepidation and apprehension . . . I respectfully suggest that the Board erred in its June 5, 1998, decision . . . . [but] I am constrained to accept that ruling, thereby resulting in this decision and compensation award." Accordingly, the ALJ noted that McBride requested authorization for his psychological treatment, Halter refused and, therefore, Halter should be liable for the costs of those medical expenses, subject to the aforementioned locality determination. The ALJ also determined that the supplemental medical evidence regarding his mental health care warranted modification stating that, "the Board obviously disagrees with the Employer and I am constrained to follow the Board's directions herein."

On May 9, 2003, after the ALJ's third decision in this matter, both Halter and McBride appealed to the BRB; Halter appealed regarding the issue of McBride's psychological condition, and McBride challenged, for the first time, the ALJ's average weekly wage determination used to compile his ultimate damage award. The BRB agreed with Halter that the law of the case doctrine should not have precluded the ALJ from considering Halter's new evidence and revisiting the issue of the causal connection between McBride's psychological condition and his employment. The BRB remanded the case for the ALJ "to consider whether Dr. Maggio's new report provides substantial credible evidence that Claimant's psychological condition was not caused or aggravated by his employment and, thus, supports modification of the Board's prior holding that Employer had not rebutted the Section 20(a) presumption." The BRB disagreed with Halter's contention that the ALJ erred in finding that McBride was unable, from a psychological standpoint, to perform the alternate position identified within Halter's facility and agreed with the ALJ's determination that McBride's medical treatment was rational and supported by substantial evidence. Therefore, the BRB held that the ALJ did not err in finding Halter liable for McBride's past medical care and affirmed the ALJ's calculation

8

regarding McBride's average weekly wage, determining that McBride was estopped from raising it because he had not previously raised it as an issue on appeal.

On remand to the ALJ[3] for the fourth and final time, the ALJ reopened the record to allow McBride to address the issue of the causal relationship between McBride's psychological condition and his employment. At this point, McBride terminated the attorney he had retained for his last appeal and proceeded *pro se* again; he offered numerous affidavits and documents into the record. On January 13, 2004, the ALJ issued a decision denying McBride's claim for past and future psychological benefits; he opined that even if McBride were suffering from a severe psychological condition, McBride's condition was not caused by the incident at Halter. In reviewing the medical reports, the ALJ determined that Dr. Maggio's report rebutted the presumption and that Drs. Hearne's and Gutpa's diagnoses were based on mere "distorted history given to them by the Claimant."

McBride filed a motion for reconsideration of the ALJ's decision and also filed a petition for review with the BRB. On February 9, 2004, the ALJ denied McBride's motion for reconsideration and on February 10, 2004, the BRB issued its order dismissing McBride's appeal as premature due to his pending motion for reconsideration before the ALJ. On February 25, 2004, McBride requested that his petition for review be reinstated. The BRB, in its final decision, thereafter affirmed the ALJ's decision on remand and the order denying McBride's motion for reconsideration. As a result,

---

[3] By this time the original ALJ, Judge DiNardi, had retired; the matter was then reassigned to ALJ C. Richard Avery.

9

McBride sought review in this court; along with his petition for review, McBride submitted a motion to appoint a guardian ad litem or lawyer specifically to facilitate the filing of his appellate brief.[4]

## II. STANDARD OF REVIEW

Under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), the BRB is required to accept the ALJ's findings of fact and conclusions of law if they are supported by substantial evidence and in accordance with the law. 33 U.S.C. § 921(b)(3) (2000). The BRB is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it, and parties shall not submit new evidence to the Board. 20 C.F.R. § 802.301 (2006). "This court, in turn, reviews decisions by the BRB to determine whether it has adhered to its proper scope of review–i.e., whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004) (citing *H.B. Zachry Co. v. Quinones*, 206 F.3d 474, 477 (5th Cir. 2000)).

## III. DISCUSSION

The ALJ is the factfinder and "is entitled to consider all credibility inferences." *Mendoza v. Marine Pers. Co., Inc.*, 46 F.3d 498, 500 (5th Cir. 1995). The ALJ determines the weight to be accorded to evidence and makes credibility determinations. *Mijangos v. Avondale Shipyards*, 948 F.2d 941, 945 (5th Cir. 1991). Moreover, when the testimony of a medical expert is at issue, the ALJ is entitled to accept any part of the expert's testimony that he chooses; he can even reject it completely. *Mendoza*, 46 F.3d at 501. The ALJ is not bound to accept the opinion or theory of any

---

[4]In correspondence filed on October 6, 2005, the Director, Office of Workers' Compensation Programs, United States Department of Labor, who had been a party to this litigation, notified the clerk's office that it would not be participating in the proceedings surrounding McBride's petition for review.

particular medical examiner; in fact, "he is entitled to weigh the medical evidence including the relative credibility of the competing experts and to draw from that evidence the inferences he deems most reasonable in light of the evidence as a whole and the common sense of the situation." *Hullinghorst Indus., Inc. v. Carroll*, 650 F.2d 750, 759-60 (5th Cir. 1981) (citation omitted).

Under the LHWCA, a claimant has the burden of proving the following elements to receive coverage: "(1) an injury was suffered, and (2) the injury occurred in the course of employment or was caused, aggravated or accelerated by conditions at the work place." *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003). Where, as in the present case, the claimant has established entitlement to invocation of the § 20(a) presumption–that the claimant is entitled to coverage–the burden shifts to the employer to rebut it with substantial evidence that the claimant's condition was not caused or aggravated by his employment. *Id.* If the ALJ finds that the § 20(a) presumption is rebutted, the presumption drops from the case, and the ALJ must decide the causation issue based on the evidence considered as a whole, with the claimant bearing the ultimate burden of persuasion. *Port Cooper/T.Smith Stevdoring Co. v. Hunter*, 227 F.3d 285, 288 (5th Cir. 2000).

Accordingly, we agree with the reasoning of the ALJ and the BRB's final determination in this case–that Halter's expert, Dr. Maggio, presented more convincing evidence regarding McBride's health conditions than McBride's experts, Drs. Hearne and Gupta. Dr. Maggio's report rebutted the presumption of causation as to McBride's alleged psychological condition.

The ALJ's decision is supported by Drs. Hearne and Gutpa's overall non-participation in the critical events that unfolded in the case. For example, neither reviewed McBride's medical records; each of their testimonies alerted the ALJ that they "based their opinions of causation solely on the

11

distorted history given to them by" McBride.[5]  Furthermore, the ALJ noted that both Drs. Hearne and

Gutpa diagnosed McBride with PTSD based on the incorrect or "exaggerated stressors described"

by McBride; neither doctor even reviewed the tests administered by the other.   Applying the same

scrutiny, the ALJ determined that because Dr. Maggio took into account McBride's version of the

facts and reviewed the medical records and accounts of the events from witnesses, his testimony and

medical opinion regarding McBride's psychological condition was the most credible.  In his reports

to the ALJ in 1997 and 2001, Dr. Maggio concluded that McBride did not have PTSD.  Instead, in

2001, but not in 1997, he diagnosed McBride with CPS and described that condition as a "major

psychiatric condition that has a thought disorder and a feeling disorder" and is a major psychiatric

illness.  Most importantly, however, is that Dr. Maggio noted  there is "no connection whatsoever

between [McBride's] work-related incident and emergence of his [CPS] over a five year period" and

that McBride's work injury "did not aggravate, exacerbate or contribute to his condition."  He noted

that CPS "is probably genetic and is a mixture of nature" and explained that, in 1997, McBride did

not have CPS; he explained that McBride began showing clinical manifestations of the psychological

disorder "only recently."  Furthermore, the testimonies of Drs. Hearne and Gutpa did not produce

evidence to contradict Dr. Maggio's testimony regarding CPS, nor did the testimonies of any of

McBride's other witnesses.[6]

---

[5]For example, the record reflects that Dr. Hearne noted that McBride had been hit in the head repeatedly by his supervisor with a blunt object.  This allegation did not come from medical records or witness testimony; it came from McBride, and was inconsistent with the account of the incident that McBride shared with Dr. Gutpa.  Moreover, as their testimonies reflect, neither doctor was aware that McBride had been terminated from Halter for failing to pass a drug test.

[6]In addition to the medical reports, McBride introduced his personal affidavit and affidavits from his mother, Queen Ester Cardin; his sister-in-law, Patricia Liddell; his son, Ricky McBride (who was eleven at the time his father's work-related incident occurred); two friends, Marvin J. Hutchins and

Therefore, we agree with the ALJ's determination that "Dr. Maggio's opinion that claimant suffers from [CPS] which was neither caused nor aggravated by work conditions, was well-reasoned and consistent with the facts regarding [McBride's] March 3, 1994, and April 13, 1994, workplace incidents." As the BRB reasoned, "the administrative law judge [in this case] set forth and evaluated all of the evidence of record, and his inferences drawn from the record evidence are reasonable"; accordingly, it held that Halter "is not liable for the payment of compensation or medical benefits related to the treatment of claimant's psychological condition." Because we find that both the ALJ's and BRB's final holdings are supported by substantial evidence that there is no causal connection between McBride's psychological condition and his work-related injuries, we deny this petition for review and affirm the decision of the BRB.

Finally, we decline to review McBride's motion to appoint an attorney or a guardian ad litem because his request is moot. McBride qualified his motion, filed on August 19, 2005, by stating that he needed assistance to "help file the brief" and "before fil[ing] the brief." He made no other mention of additional reasons prompting him to make this request. Therefore, because McBride filed his brief on November 30, 2005, his request for a guardian ad litem or an attorney is dismissed as moot; we need not consider whether it is within the jurisdiction of this court to actually accommodate such a request.

## IV. CONCLUSION

For the foregoing reasons we DENY the petition for review and AFFIRM the decision of the BRB.

---

Curtis Wilson, Jr., and his wife, Blondine McBride.

13