# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2011

Lyle W. Cayce
Clerk

No. 11-60298
Summary Calendar

P&O PORTS TEXAS, INCORPORATED,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR,

and

HIPOLITO SALAZAR,

Respondents

---

Petition for Review of an Order of the
Benefits Review Board
BRB No. 10-0583

---

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Before the court is a petition for review from a decision of the Benefits Review Board ("BRB") affirming an award of workers' compensation. As there is substantial evidence to support the award, we deny the petition for review.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60298

## I.

Claimant-Respondent Hipolito Salazar is a mechanic formerly employed by Employer-Petitioner P&O Ports Texas, Inc.  On Friday, May 16, 2008, Salazar was working under a forklift when a wrench came loose and struck him on his right leg between his thigh and knee.  Salazar reported the injury to his employer when he returned to work on Monday, May 19, 2008.  At that time, Salazar's knee was bruised and swollen.  Engineering manager, Robert Amatra, then directed Salazar to seek medical treatment.  Salazar was treated at the NOVA Clinic the same day.  He was diagnosed with internal derangement of his right knee, and was prescribed physical therapy and medication.

On June 12, 2008, an MRI was taken of Salazar's right knee.  The MRI showed degenerative changes to his medial meniscus, but did not show any visible tear of the meniscus.  Salazar was evaluated by Dr. David Vanderweide on June 13, 2008.  Dr. Vanderweide diagnosed Salazar with a contusion of his right distal thigh, but concluded that surgical intervention was unnecessary.

Over the following months, Salazar continued to complain of pain in his right knee.  On December 1, 2008, Salazar returned to the NOVA Clinic, complaining of pain and swelling in his knee.  On December 5, 2008, a second MRI was performed on Salazar's knee, revealing a medial meniscus tear and loss of cartilage near his right patella.  Salazar was prescribed pain management.  Dr. Vanderweide evaluated Salazar again on December 15, 2008, and opined that Salazar's May 16 injury could not have caused his meniscal tear.

On February 6, 2009, Salazar was evaluated by Dr. John J. DeBender.  Dr. DeBender diagnosed Salazar with a contusion on his right distal thigh, traumatic chondromalacia, and a medial plical band in his right knee.  Dr. DeBender determined that it was unlikely that Salazar's pain was caused by a torn meniscus.

At the request of Petitioner, Salazar was evaluated by Dr. Frank C.

No. 11-60298

Barnes on April 17, 2009. Dr. Barnes diagnosed Salazar with a contusion of his right quadriceps muscle, which Barnes believed was related to Salazar's accident on May 16, 2008. However, Dr. Barnes did not believe that the findings of the December 2008 MRI were related to his injury.

Dr. Walter R. Lowe performed surgery to repair Salazar's right knee medial meniscal tear on June 11, 2009. On November 10, 2009, Salazar returned to Dr. Lowe complaining of severe pain in his right knee. On November 19, 2009, an MRI of Salazar's knee was taken, revealing small joint effusion and neuroma. Salazar underwent a second surgical procedure on his knee on January 29, 2010, which relieved his symptoms.

At Salazar's request, Dr. DeBender and Dr. Lowe provided supplemental medical reports in March 2010. Dr. DeBender concluded that if Salazar had twisted to avoid contact with the wrench at the time of the accident, the twisting could have aggravated pre-existing degenerative conditions. Dr. Lowe determined that, while it was debatable whether the May 2008 injury caused Salazar's meniscal tear, the tear was made more symptomatic by the injury.

Salazar made a claim for benefits against Petitioner under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* The dispute was submitted to an administrative law judge ("ALJ"). On June 8, 2010, the ALJ rendered a decision and order in favor of Salazar, requiring Petitioner to pay Salazar compensation benefits and medical expenses. Petitioner appealed the decision to the BRB, which upheld the ALJ's ruling. Petitioner then filed a petition for review before this court.

## II.

"This court reviews the decisions of the BRB for errors of law and applies the same substantial evidence standard that governs the BRB's review of the ALJ's factual findings." *Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500 (5th Cir. 1995). "The findings of the ALJ must be accepted unless they are not supported

by substantial evidence in the record considered as a whole or unless they are irrational." *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991). "'Substantial evidence in the record considered as a whole' is a strict and limiting standard of review." *Dir., Office of Workers' Comp. Programs v. Bethlehem Steel Corp.*, 620 F.2d 60, 63 (5th Cir. 1980). "Substantial evidence is evidence that provides a substantial basis of fact from which the fact in issue can be reasonably inferred" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Avondale Indus., Inc. v. Dir., Office of Workers' Comp. Programs*, 977 F.2d 186, 189 (5th Cir. 1992) (internal quotation marks and citations omitted).

"The Board does not have the authority to engage in a de novo review of the evidence or to substitute its views for those of the ALJ." *Mijangos*, 948 F.2d at 944. "The ALJ's selection among inferences is conclusive if supported by the evidence and the law. The ALJ determines the weight to be accorded to evidence and makes credibility determinations." *Mendoza*, 46 F.3d at 500. "[W]here the testimony of medical experts is at issue, the ALJ is entitled to accept any part of an expert's testimony or reject it completely." *Id.* at 501.

A claimant has the initial burden of establishing a prima facie case of a presumptive entitlement to benefits. To do so, a claimant must show "that (1) an injury was suffered, and (2) the injury occurred in the course of employment or was caused, aggravated or accelerated by conditions at the work place." *Ortco Contractors, Inc., v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003). Once a claimant has satisfied this burden, "the employer must affirmatively rebut this presumption with 'substantial evidence to the contrary.'" *Id.* (quoting 33 U.S.C. § 920(a)). Once an employer produces substantial evidence "-more than a modicum but less than a preponderance- that the injury was not work-related, the ALJ must assess the issue of causation by looking at all record evidence." *Id.* at 290. In assessing the issue of causation, the aggravation rule "provides

that, where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable." *Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986).

Petitioner asserts that because the record evidence is inconclusive with respect to whether the May 16 injury in fact caused Salazar's miniscus tear, Salazar is not entitled to benefits under the LHCWA. This analysis is flawed for a number of reasons. In this case, the ALJ determined that, although Petitioner presented sufficient evidence to overcome Salazar's presumption of an entitlement to benefits, upon review of the entire record, the May 16 injury contributed to or aggravated Salazar's right meniscal problem. For purposes of our limited review, the causation requirement is satisfied under the aggravation rule as long as there is substantial evidence that Salazar's injury worsened his condition, even if he cannot conclusively demonstrate that the injury was the direct or sole cause of his miniscus tear. There is clearly substantial evidence in the record to support this conclusion. Dr. Lowe, Dr. DeBender, and Dr. Barnes all reported that the problems Salazar subsequently endured with his knee were related to his employment injury. Moreover, the ALJ was entitled to attach greater weight to the conclusions of Dr. Lowe, an expert in knee surgery who determined that the meniscal tear was made more symptomatic by the workplace injury, than to the conclusions of Dr. Vanderweide. The ALJ emphasized that the absence of symptoms prior to the injury indicated that the injury worsened an existing knee problem. Considered together, a reasonable mind might accept this evidence as adequate to support the conclusion that Salazar's employment injury worsened a preexisting impairment.

No. 11-60298

## III.

As there is substantial evidence in the record to support the ALJ's and BRB's decisions, the petition for review is DENIED.